# Gray *v.* The State.

*Indictment for Assault with Intent to Murder.*

1. *Evidence of malice or intent.*—Under a prosecution for an assault with intent to murder, any evidence is admissible which tends to show malice, illwill, or other motive for the act of the accused; and for this purpose, the fact of a former altercation or difficulty between the parties, but not the merits or details thereof, may be given in evidence.

2. *Assault; charge defining.*—A charge to the jury, in these words, "An

assault is an attempt to strike, in striking distance, or shoot in shooting distance," construed with reference to the evidence in this case, is not erroneous.

3.   *General exception to charge partly correct.*—A general exception to a charge, separable into two or more distinct propositions, will not avail, if any one of those propositions be correct.

4.   *Asking defendant if he has anything to say in arrest of judgment; correcting judgment entry.*—When the judgment entry, in a case of felony, recites that the defendant was asked by the court if he had anything to say in bar or preclusion of judgment, the recital imports absolute verity, and testimony can not be received to impeach it ; and motion being made to correct the entry in this particular, supported by affidavits, and overruled by the court on the evidence adduced, this court can not revise its ruling on bill of exceptions.

FROM the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The prisoner in this case was indicted for an assault on Spencer Brooks, with the intent to murder him, and went to trial on the plea of not guilty.   On the trial, he reserved a bill of exceptions, in which the evidence adduced, and the several rulings of the court, are thus stated :

"The State introduced Spencer Brooks as a witness, who testified, that Matt Gray, the defendant, had been concerned in an assault on him with a knife, whereby he was severely cut in the neck, a short time before the assault charged in the indictment."   To the introduction of this testimony the defendant objected, and moved to exclude the same from the jury; which motions, each, the court overruled, and the defendant excepted.   "Said witness then testified, that as he was going to Mr. Mitchell's, to the defendant's trial for said assault, he heard the defendant say, 'One thing sure, if any body swears a lie on me to-day, I will go up on him;' and that this was on the same day of the assault for which the defendant is now indicted.   To the introduction of this evidence, also, the defendant objected," and moved to exclude it from the jury; and he reserved exceptions to the overruling of this objection and motion.   "The defendant then moved the court to exclude from the jury so much of the testimony of said witness as showed, or tended to show, any thing relating to the details of any difficulty between witness and the defendant, previous to the assault with which defendant now stands charged; which motion was overruled by the court, so far as the testimony here admitted is concerned," and the defendant excepted.   "The witness then stated, that after the defendant's trial by said Mitchell, and after he (witness) had left Mitchell's, and gone some three or four hundred yards, defendant overtook him, and commenced firing on or at him with a pistol; that he threw up his right hand, and said, 'What is the matter, Matt? You have no right to shoot me;' that defendant then said, 'God damn you, I intend to kill you.'   Witness said, that he was not hit by

any of the three shots fired at him by the defendant, but heard the balls whistle by him; that defendant was about twelve or fifteen steps from him when he fired at him; that he ran after defendant had fired at him three times, and that all this occurred in Montgomery county, in the early part of the year 1879."

Abe Dorsey, another witness for the State, testified that, "on the day of the trial, he had left Mr. Mitchell's, with some others, ahead of the defendant, but Spencer Brooks was ahead of him; that the defendant, running, overtook and passed him and the others, going in the direction of Spencer Brooks, and having a pistol in his hand; that he (witness) ran after defendant, and caught up with him, just before he fired the first shot, and said to him, 'Dont shoot him, Matt,' that the defendant replied, 'I am only going to frighten him;' that defendant was laughing when he said this, and did not look mad; that he (witness), at the time of the first shot, was between defendant and said Brooks, and had hold of defendant; that the defendant fired these shots in the air, and above the head of said Brooks, and did not shoot directly at him; and that some one then told Brooks to run." Joseph A. Mitchell, another witness for the State, was then introduced, and testified, "that he was a justice of the peace in Montgomery county; that the defendant, some time in the spring of 1879, was a defendant to a charge, made against him by Spencer Brooks, of being accessory to an assault made on said Brooks with a knife. The defendant objected to the introduction of the evidence of this witness, as to the charge on which defendant was tried before him," and also moved to exclude the same from the jury; and he reserved exceptions to the overruling of this motion and objection. "The defendant then moved the court to exclude from the jury the evidence of said witness as to the charge on which defendant was tried before him," and also "all the evidence of said witness as to all matters connected with said trial, except showing the fact that a trial was had before him in which said defendant was a defendant." The court overruled the first motion, and the second also, "so far as it applies to the evidence admitted by the court;" to which rulings exceptions were reserved by the defendant. "The witness then testified, further, that after the trial of said cause, and after all the parties and witnesses had left his court-room, except the defendant and one Gilmer, who was acting as constable, defendant said, speaking of Spencer Brooks, 'God damn him, he swore a lie on me, and I will kill him before night.' Witness said, that Brooks had left the premises before that time, and was some distance off, on

the road to the plantation where he was employed; that de-
fendant also left the premises, a few minutes after making
said threat, and proceeded in the direction in which said
Brooks had gone; that shortly afterwards, in from three to
five minutes, witness heard three pistol shots in the direction
in which the defendant had gone, and about three or four
hundred yards off, but could not see who fired them;" and
that he thereupon issued his warrant for the arrest of the
defendant, and, on a subsequent hearing, bound-him over to
answer the indictment in this case.    The State also intro-
duced Austin Scott and Henry Scott as witnesses, who were
at work in a field on the side of the road at the time of the
shooting, and about one hundred yards distant.    Austin
Scott testified, "that he saw the defendant fire, but could
not tell whether he shot at Brooks, or over him; that he saw
the defendant throw up his hands in the direction of said
Brooks, but could not see whether he shot at him, or over
him, or under him; that he heard but two shots, but heard
considerable noise from the party at or near the shooting;
heard some one tell Brooks to run, and heard defendant say,
'Yes, God damn you, you had better run.'"    Henry Austin
testified, " that he saw defendant shoot in the general direc-
tion of said Brooks, but could not tell whether he shot at
him or over him; did not hear defendant say anything to
Brooks; did not see Abe Dorsey between said Brooks and
defendant, and did not see any one between them."

The State having here closed, the defendant introduced
Alex. Williams as a witness, who testified, " that he was
with Abe Dorsey and some others, on the road-side leading
from Mitchell's, when defendant passed them, having his
pistol in his hand; that he said to defendant, 'Matt, don't
shoot Spencer Brooks'; and that defendant replied, 'I am
not going to shoot him—I am only going to scare him.'
Witness said, that he followed defendant, and was next to
Abe Dorsey behind him; that the defendant fired the first
shot in the direction of said Brooks at a distance of about
one hundred yards, but above his head; that he overtook
the defendant, and was present when the other shots were
fired; and that they were fired over the head of said Brooks,
and not at him.    Witness said that, by 'one hundred yards,'
he meant not quite the length of the court-room; which is
about thirty yards long."

"This was all the evidence, and the court thereupon
charged the jury, in writing, as follows: '*An assault is an
attempt to strike, in striking distance, or shoot in shooting dis-
tance.  If the defendant shot at Spencer Brooks, and within
reasonable distance that the pistol would carry the ball, so as to*

*cause injury to the party shot with a pistol, then he is guilty of
an assault. And if he did this with the malicious intent to kill
him, and you are satisfied of both these facts from the evidence,
beyond a reasonable doubt, [and] that it took place in this county,
then you should find the defendant guilty as charged;* and your
verdict would then be, ' We, the jury, find the defendant
guilty as charged.' If you are not satisfied, beyond a reason-
able doubt, of the intent to murder, but are satisfied beyond
a reasonable doubt that he is guilty of the assault, then your
verdict will be, 'We, the jury, find the defendant guilty of
the assault as charged;' and then you will assess a fine, not
more than $500. If you have a reasonable doubt as to the
defendant's guilt of an assault, then you will find him not
guilty. You will carefully weigh the evidence (which is the
statement of the witnesses from the stand, as the court has
permitted it to come to you), with all the circumstances
proved in the case, and then say—first, are you satisfied
beyond a reasonable doubt of the assault; and then, in the
same way, you will ascertain the intent with which the assault
was made—was it made, and with the intent to murder? To
ascertain this, you may look to the feelings of the defendant
to the party assaulted, and to any threats, if any proven,
before the shooting, and if there was any weapon used, and
all the circumstances under which it was used. It is your
duty to reconcile the testimony, if you can; and if you can
not, you must give credit to that part which you believe to
be true. You will weigh the testimony for yourselves, and
ascertain what is the truth ; and if you are satisfied, beyond
a reasonable doubt, of the defendant's guilt, it is your duty
to say so by your verdict. If you have a reasonable doubt
of his guilt, it is your duty to find him not guilty.' "

To the italicized portions of this charge the defendant
reserved three separate exceptions : the first, to the first
sentence ; the second, to the first and second sentences ; and
the third, to the entire italicized portion of the charge. The
court charged the jury, also, at the request in writing of the
defendant—1st, " that to sustain a conviction of an assault
with intent to murder, the State must show, to the satisfac-
tion of the jury, that the defendant was near enough to
Spencer Brooks to kill him ;" and, 2d, "that the intent with
which the defendant shot at Spencer Brooks is a material
fact in the case, and must not be implied as matter of law,
but must be ascertained by the jury from all the evidence in
the case."

The jury having returned a verdict of guilty, the defendant
afterwards made a motion for a new trial, which the court
overruled ; and the minute-entry then recites, "and the de-

fendant being interrogated, and having nothing to say in bar or preclusion of the judgment of the court, the court thereupon sentenced the defendant to the penitentiary," &c. On a subsequent day of the term, the defendant entered a motion to amend and alter the judgment-entry in this respect; filing in support of it his own affidavit, to the effect that he did not hear or understand the court to ask him if he had anything to say why judgment should not be rendered against him on the verdict; and the affidavits of both of his attorneys, to the effect that the question was not asked him. The court overruled this motion, and the defendant excepted to the overruling of it. The minute-entry, or judgment overruling the motion, states that the "distinct recollection" of the presiding judge was that the question was asked as recited; "and in this recollection the judge was sustained by the recollection of the solicitor, the sheriff, and two of his deputies, who were present;" and further, that the court then again asked the defendant if he had anything to say against the rendition of judgment, &c.

SMITH & GLAZE, for the prisoner.—1. Evidence of a substantive offense, distinct from that for which the accused was on trial, ought not to have been received.—*Tarver v. The State*, 43 Ala. 354; *Gassenheimer v. The State*, 52 Ala. 313; *Ingram v. The State*, 39 Ala. 247, 251; *Mason & Franklin v. The State*, 62 Ala. 543. The particulars of the former offense, as detailed by Brooks and Mitchell, were clearly inadmissible, and should have been excluded.—Authorities *supra;* also, *Ogletree v. The State*, 28 Ala. 693.

2. The court erred in the definition of an assault, as shown by the first part of the charge to which an exception was reserved. All the authorities agree, that an intent to do violence to the person of another, and a present ability to carry the attempt into execution, must concur, to constitute an assault.—*Lawson v. The State*, 30 Ala. 14; *Blackwell v. The State*, 9 Ala. 79; *Shaw v. The State*, 18 Ala. 547; *Simpson v. The State*, 59 Ala. 18; Wharton's Amer. Cr. Law, § 1241.

3. On the question of intent, as an element of the offense charged, the charge of the court is open to most serious objection. An assault with intent to murder is made a felony by statute, while an assault with intent to kill or maim remains a misdemeanor, as at common law. To make out the felony, the specific intent must be proved as charged—that is, an intent which, if carried into successful execution, would make the act murder at common law. A malicious intent to kill is nothing more than an intent to kill, and would not make the assault more than a misdemeanor.—*Burns v. The State*,

8 Ala. 313; *Mullen v. The State*, 45 Ala. 45; *Simpson v. The State*, 59 Ala. 18; *Meredith v. The State*, 60 Ala. 446; *Ogletree v. The State*, 28 Ala. 693. Again, it is not sufficient that the party assaulted was within the reasonable distance to be injured by the shot: he must have been within the reasonable distance to be killed by it.—*Mullen v, The State*, 45 Ala. 45.

4. The motion to correct the judgment-entry should have been allowed. All the evidence showed that, in legal effect, the question had not been asked before sentence; and the error was not cured by asking it afterwards. The "distinct recollection" of the judge was not under oath, and was not evidence of any thing; and its recital in the judgment-entry gives it no validity. That the defendant had the legal right to have the question asked before sentence, see *Croker v. The State*, 47 Ala. 53; *Mullen v. The State*, 45 Ala. 44; *Perry v. The State*, 43 Ala. 21; *Crim v. The State*, 43 Ala. 53.

H. C. TOMPKINS, Attorney-General, *contra.*—The intent with which the assault was committed, and which was the main issue in the case, could only be proved by the defendant's conduct, acts, and declarations; and any evidence which, if death had ensued, would be admissible in proof of malice, is competent evidence to show the intent.—2 Wharton's Amer. Cr. Law, §§ 635a, 635b; *Hudson v. The State*, 61 Ala. 334. If any particular details were stated by the witnesses, not within the rule, they ought to have been specifically pointed out.—*Gayle v, Railroad*, 8 Ala. 586; 1 Brick. Digest, 886, § 1186. As to the testimony of Mitchell, see, also, *Neal v. The State*, 53 Ala. 465; *Childs v. The State*, 58 Ala. 349.

2. There was no error in the charge of the court.—*State v. Blackwell*, 9 Ala. 79; *Johnson v. The State*, 35 Ala. 363; 2 Bishop's Crim. Law, ed. 1858, § 32; 1 Russell on Crimes, m. p. 1004; *Meredith v. The State*, 60 Ala. 441; *Sharp v. The State*, 19 Ohio, 379; *Cole v. The State*, 5 Eng. 318.

3. The motion to correct or set aside the judgment was nothing more than a motion for a new trial on that question, and can not be reviewed. Besides, the judgment-entry shows that the question was asked.—*Spigener v. The State*, 58 Ala. 421.

STONE, J.—The prisoner was indicted for an assault with intent to murder Spencer Brooks, which, under our statute, is made a felony. In a trial under such indictment, the intent with which the alleged act was done becomes a material inquiry. As in the case of the kindred though higher crime of murder, formed design, coupled with the attempted

use of means capable of producing the result aimed at, makes the offense complete, although in this lesser offense no actual battery or injury is inflicted. Hence, any testimony tending to prove malice aforethought, ill-will previously formed, ancient grudge, or any other probable motive for the act, is admissible, as shedding light on the question of intent, or incentive of the crime. And, under this head, it is permissible to prove previous threats, previous altercations, or prior combats, although such proof may establish the commission of another and substantive offense, for which a separate indictment would lie. Such proof is received, not as constituting any part of the crime for which the prisoner is being tried : its object and scope are to show the relations of the parties, and to aid the jury in determining whether there was the formed design, or felonious intent to commit the crime of murder. Cherished hate, or ill-will, is one of the incentives to murder. But, it is the fact of such previous altercation or combat, and not the particulars or merits of the quarrel, that can be put in evidence.—*Hudson v. The State,* 61 Ala. 333 ; *Noles v. The State,* 26 Ala. 31 ; *Ingram v. The State,* 39 Ala. 247 ; *Martin v. The State,* 28 Ala. 71 ; *Commander v. The State,* 60 Ala. 1 ; *Faire v. The State,* 58 Ala. 74. Under this unquestioned principle, all the evidence objected to was clearly admissible. And it is not shown that any of the details or particulars of the former rencontre, or altercation, were put in evidence. Hence, no field is shown for the operation of the rule, that the fact only, and not the particulars, of a former quarrel, can be given in evidence. This record fails to show any evidence which the City Court should have excluded, on the prisoner's motion to exclude so much of the testimony as tended to show the details of any previous difficulty between the parties.

2. The first exception to the charge is to the words, " an assault is an attempt to strike in striking distance, or shoot in shooting distance." This is the language of some of the authorities ; while others are a little more specific, and say there must be an attempt coupled with a present ability to inflict a battery.—Clark's Manual, §§ 618, 619, 620, 621, 622 ; 2 Bish. Cr. Law, 6th ed. §§ 23, 28, 30, 31 ; *State v. Blackwell,* 9 Ala. 79 ; *Johnson v. The State,* 35 Ala. 363 ; *Meredith v. The State,* 60 Ala. 441. The word 'attempt' means, 'to make an effort, or endeavor, or an attack.' An attempt implies more than an intention formed. Some step towards consummation must be taken, before the intention becomes an attempt. Attempt to strike in striking distance, or to shoot in shooting distance, includes the intention, present ability, and some effort or endeavor to carry that intention into exe-

cution. An effort to strike, within striking distance, is an assault. An attempt to shoot, within shooting distance, imports that the assailant had in his possession some description of fire-arm, that he made an effort to use it, and the person on whom he attempted to use it was within the distance the fire-arm would effectively project or discharge its ball. Less than this would not be an attempt to shoot in shooting distance. But, the sentence we have been criticising, is merely the introductory sentence of the charge. Further on, the court explained what was necessary to constitute an attempt; and construing the charge in reference to the evidence, the City Court did not err in the language covered by the first exception.

3. Having reached the conclusion that the City Court did not err in the language quoted above—the subject of the first exception to the charge—it follows that there is nothing in the other two exceptions; for each of them embraces the language decided above to be free from error, and some other part of the charge of the court, in one and the same exception. An exception to a charge, separable into two or more distinct propositions, will not avail, unless each of the propositions be erroneous. Parties excepting must direct the attention of the court to the error complained of; for the court, having attention thus directed to the particular point of exception, may, *ex mero motu*, withdraw the language objected to, or opposing counsel may consent to its withdrawal. *Bernstein v. Humes*, 60 Ala. 582; *South & North Ala. Railroad v. Jones*, 56 Ala. 507. But, when the charge is construed in reference to the evidence, we do not think the court erred in any part of the charge that was excepted to. Under the evidence, the real points of controversy in the court below must have been—first, was the prisoner, when he fired his pistol, within shooting distance of Brooks; second, was it his intention to shoot him, or did he only intend to frighten him? These were questions for the jury, and the record fails to show they were not fairly presented in the charge of the court.

4. There is nothing in the other exceptions reserved which can benefit the accused. The record of the court below imports absolute verity, and testimony can not be received to assail it, in the absence of a statute authorizing such inquiry. There is no statute authorizing this court to correct the judgment-entry, as was sought in this case.—*Weir v. Hoss*, 6 Ala. 881; *Deslonde v. Darrington*, 29 Ala. 92.

The judgment is affirmed.