# McAnally *v.* The State.

## Indictment for Murder.

1. *Declarations and conduct of conspirators, as evidence against each other.*—In charges of crime which, in their nature, may be perpetrated by more than one guilty participant, if there be a previously formed purpose to commit the offense, the acts, declarations and conduct of each conspirator, in promotion of the object or purpose of such conspiracy, or in relation to it, become the acts, declarations and conduct of the others, and are competent evidence against them; but the sufficiency of such evidence must be determined by the jury, and, before it can be admitted to go to them, a foundation should be laid, by proof addressed to the court, *prima facie* sufficient to establish the existence of such conspiracy.

2. *Alibi as defense.*—When an *alibi* is set up as a defense, a charge to

[McAnally v. The State.]

the jury, given at the instance of the prosecuting officer, asserting that "it is essential to the sufficiency of such defense that it cover and account for so much of the time of the transaction as to render it impossible the prisoner could have committed the offense," lays down too exacting a rule.

3. *Proof of malice; former difficulty.*—Proof of a former difficulty between the defendants and the deceased tends to show malice, and is admissible for that purpose; but the particulars or merits of that difficulty can not be inquired into.

FROM the Circuit Court of Blount.

Tried before the Hon. LEROY F. BOX.

The indictment in this case was found at the May term, 1881, and charged that the defendants, Willis McAnally, James McAnally, Reuben McAnally, Philip Musgrove, Joseph Musgrove and William Musgrove, "unlawfully, and with malice aforethought, killed Frank A. Hanna, by shooting him with a gun." A change of venue was granted to Philip Musgrove and William Musgrove, on their application; and the other defendants being jointly tried, and each pleading not guilty, all were acquitted except said Willis McAnally, who was convicted of murder in the first degree, and sentenced to the penitentiary for life. The case is brought to this court by said Willis McAnally, on a bill of exceptions reserved during the trial, which purports to set out, "in substance, all the evidence offered to the jury on the trial," and states these facts: "The State offered evidence showing that said Frank A. Hanna was shot and killed at the house of Thomas B. McAnally, in said county, on the 23d April, 1881, between the hours of eight and nine o'clock at night; that he was sitting at the time of the killing near an open door, reading a newspaper, which he held in one hand, and holding a small brass lamp in the other. Said Thos. B. McAnally had just lain down on a bed in the same room, when a gun fired, with a report, as described by him, like a blast, and the room was instantly in darkness. As soon as possible, said Thos. B. McAnally lit a lamp, and found the deceased lying upon the floor dead. The missile of death was a single large ball, which passed through and shattered the bones of the right arm about the wrist, and then, entering the right side, passed nearly through the deceased, and lodged under the left shoulder-blade. The next morning after the killing, a piece of patching was found, in or near a path leading from the door to a fence, and about twelve or fifteen feet from the door;" and the patching was produced, some peculiarities being described as tending to identify the gun from which the shot was fired. "On the same morning an inquest was held over the body of the deceased, and on the Monday morning afterwards a ball was extracted from it, which was offered in evidence. For a number of years before April, 1881, the deceased had resided at Bangor,

[McAnally v. The State.]

Alabama, but was not staying there when shot. A few months prior thereto, he had sent his children to Murphree's Valley, and he himself had gone to Flint, in Morgan county, and thence to Birmingham, on business; and he had come from Birmingham to the house of said Thos. B. McAnally, on Friday evening before the Saturday night on which he was killed. The Circuit Court at Blountsville began on April 25th, 1881, and the deceased was on his way from Birmingham in attendance upon said court. It was shown that he went with said Thomas McAnally to Bangor in the afternoon of April 23d, 1881, and remained there until about half an hour before sunset; and the house of said McAnally was distant from Bangor about one mile, most of the distance being up hill. The evidence adduced on the trial, by which it was sought to fix the guilt of this assassination on the defendants, was entirely circumstantial as to each and all of them; and the circumstances offered for this purpose were substantially as follows:

"1. *As to the proximity of the defendants to the place of the killing:* It was shown that, at the time of the killing, Joseph Musgrove, one of the defendants, resided at Bangor, was railroad agent at the time, and was at Bangor all day on said April 23d; that he was at his home in Bangor that night when one Rutledge went there with the news of the killing; that Willis McAnally, one of said defendants, was then staying or boarding with said Joseph Musgrove, sleeping at night in the ticket office, and assisting said Joseph as agent of the railroad; and that said Willis was at Bangor the day and night of the killing. It was shown that Reuben McAnally, one of the defendants, resided between two and three miles from Bangor, and about one mile and a half from the house of said Thos. B. McAnally; that on the morning of said April 23d, passing through Bangor, he went to Blount Springs, remained there until in the afternoon, and returned through Bangor, being seen there about sundown, where he remained a few minutes, and then left for home in company with one Rutledge, a witness for the State, carrying a plow point and an iron bolt; and that said Rutledge accompanied him until they passed Thomas McAnally's house, when they separated, after dark, each going in the direction of his own home. It was shown that James McAnally, one of said defendants, resided about two and a half miles from Bangor, and was at Bangor, and in the depot, on the afternoon of said April 23d; and that he left Bangor before sundown, with a sack of flour, going in the direction of home, and in company with one Jett, who was a witness for the State. The State offered evidence, also, showing that Philip M. Musgrove, indicted but not on trial, and who, at the time of the killing, resided at Cullman, Alabama, was seen passing through Garden City, about

three miles from Bangor, on the afternoon of said April 23d, about an hour by sun, going in the direction of Bangor, and was seen at Bangor early the next morning after the killing; while the evidence of the defense tended to show that he got to the house of his son, said Joseph Musgrove, at Bangor, about dark, remained there until after nine o'clock at night, and then went, in company with William H. Musgrove, to the house of Gordon Musgrove, also a son of said Philip, then residing at Bangor, where he slept that night. As to said William H. Musgrove, also indicted but not on trial, it was shown that he resided, at the time of the killing, ten or twelve miles from Bangor, in the direction of Blountsville; and one Cole, a witness for the State, testified that he saw said William H. at church at ' Fowler's Cove,' about eight miles from Bangor, during and after the morning service on said 23d April, and then and there had a conversation with him. Said witness was then asked by the prosecuting officer, ' *What did said William H. Musgrove say to you there?*' The defendants on trial, including said Willis McAnally, objected to this question, and duly excepted to the overruling of their objection. The witness answered, that said W. H. Musgrove told him that he was going to Hanceville, and that he wanted to get witnesses to invalidate the oath of the deceased.''

"In behalf of said Joseph Musgrove and Willis McAnally, the deposition of Mrs. Jane Berrier was read to the jury, who was the mother-in-law of said Joseph Musgrove, and who testified, in substance, that she was at home, at said Joseph's house, on the night of the killing, and said Joseph, Willis, Philip and William H. were all at the house, from about eight o'clock, or dark, until a little after nine, when they all left in the direction of the depot; that said Joseph came back in about ten minutes, and had been back about fifteen or twenty minutes, as well as she could remember, and was in a room giving medicine to his sick children, when said Rutledge came, and called, and said that some one had killed Frank Hanna, and wanted said Joseph to go with him to the place of the killing; that when Rutledge came up, and while he and witness were talking, said Joseph came out where they were, and said to Rutledge, ' *Is it possible?*' or, '*Aint you joking?*' to which Rutledge answered, ' No, *I am not joking, and I want you to go with me;*' and that said Joseph went with him. Jeff. Murphree, a colored man, was also examined as a witness for said two defendants, and testified that, on the day of the killing, he was in the employment of said Joseph Musgrove; that he had been out hunting on that evening, and got in after sunset; that Dr. (Philip) Musgrove was at said Joseph's when he got home, and ate supper with the family; that William H. Musgrove came in after supper, and

[McAnally v. The State.]

supper was fixed for him after the others had finished, and witness afterwards had his supper; that he (witness) then went to the house of William Warren, a colored man, from fifty to one hundred yards distant, and left said Joseph Musgrove in his room writing, and Dr. Philip, William H., and Willis McAnally were sitting on the front porch, laughing and talking as usual; that he (witness) went to said Warren's between eight and nine o'clock, and had been there fifteen or twenty minutes, and had just lain down, when he heard a gun fired." Gordon Musgrove, who was also a son of said Joseph Musgrove, and who was examined as a witness for said Joseph and Willis, testified that said Joseph and Philip came to his house on the night of the killing, "about fifteen or twenty minutes after nine o'clock, and went into an adjoining room to sleep about half an hour thereafter." "For Reuben and James McAnally, in addition to the evidence before stated, there was testimony tending to show that, at the time of the killing, they were at their respective homes, distant more than a mile from the house of said Thomas B. McAnally; but such testimony was not any stronger, or more reliable, than that above stated tending to establish an *alibi* for said Joseph Musgrove and Willis McAnally. There was no other evidence as to proximity, as to any of the defendants indicted or on trial."

"*As to the motive, statements, threats, &c.*, the State offered evidence tending to show that, during court at Blountsville about five years ago, and at other places and times about five years ago, said Willis McAnally had threatened to kill the deceased,—at one time saying that he would kill him if it took him twenty years to do it; but no threats were made by said Willis within less than five years before the trial, and the evidence showed that during all these years said Willis lived at Bangor, where the deceased also lived until within a few months before the killing. It was in evidence, also, that said Willis had had a difficulty with the deceased, for which he had been prosecuted by the deceased, and convicted on the trial, several years before the killing; that said Willis McAnally was a son of said James McAnally, another one of said defendants, and a brother of Louisa J. McAnally, who had prosecuted the deceased on a charge of bastardy in the year 1877, while said James McAnally had brought an action against the deceased for the seduction of his said daughter, which terminated adversely to the plaintiff therein in 1879." This evidence seems to have been admitted without objection. "In the further progress of the trial, during the examination in chief of said Thomas B. McAnally, a witness for the State, said witness testified, in answer to a question by the solicitor, that he was present at a difficulty between the deceased and the three Mus-

groves here indicted, which took place at Bangor, about Christmas, 1879;" and the court allowed the witness to be examined, against the objection of the defendants, as to the particulars of this difficulty—who was armed, what was the cause of the difficulty, what was said and done, &c.; and to these rulings of the court exceptions were duly reserved by the defendants.

"The State offered evidence, also, tending to show that the three Musgroves named in this indictment were indicted by the grand jury of said county, together with Gordon Musgrove, for an assault upon the deceased; that said indictment was pending at the time the deceased was killed, and was tried after his death, resulting in the conviction of the three Musgroves here indicted; and that said indictment was for the same difficulty testified to by said Thos. B. McAnally. The State offered in evidence the record and proceedings in the Circuit Court of said county in a certain cause therein, wherein the State of Alabama was plaintiff, and said William H. Musgrove was defendant, under an indictment for perjury. Said prosecution was pending at the time the deceased was killed, and for several years prior thereto; and a trial was had at the Fall term of said court, 1881, resulting in a verdict of acquittal. The defendants objected to the admission of the record and proceedings aforesaid; the court overruled the objections, and allowed the evidence to be read to the jury; and to this action of the court the said defendants excepted, including the said Willis McAnally. In connection with the said record and proceedings, the State offered evidence to show that the deceased was a material witness for the prosecution, and was active in the prosecution; and to the admission of this evidence, against their objection, the said defendants duly excepted."

The court gave the following (with other) charges to the jury, on the request of the prosecuting officer: 3. "When a homicide has been committed, and the circumstances tend to show that the accused, or either of them was the perpetrator; then, the absence of any other guilty agent is a circumstance which may be weighed and considered, in connection with the other evidence, as evidence against the accused, upon the question whether they, or either of them, committed the homicide." 6. "If the jury believe that the circumstances of time, place, motive, means, opportunity and conduct of the defendants, concur in pointing them out as the perpetrators of the act charged in the indictment, the force of such circumstances is strengthened, if the evidence in the case shows the absence of any trace or vestige of another agent, with like motive, means and opportunity." 7. "It is essential to the proof of an *alibi*, that it should cover and account for the whole of the time of

[McAnally v. The State.]

the transaction in question, or at. least for so much of it as to render it impossible that the defendants could have committed the imputed act." The defendants duly excepted to each of these charges.

Jno. W. Inzer, Geo. H. Parker, Hamill & Dickinson, and Jno. A. Lusk, for the appellant.—(1.) The statements of W. H. Musgrove, made in the afternoon of the day of the killing, had no connection whatever with that occurrence, and would not have been relevant evidence against him, if he had been on trial; and even if admissible against him, they were not competent evidence against McAnally and others, unless a conspiracy among them was first established. (2.) That there was no conspiracy is conclusively established by the verdict finding Willis McAnally alone guilty; and without proof of a conspiracy, the acts and declarations of the other defendants were not competent evidence against him.—1 Greenl. Ev. § 111; *Martin & Flinn v. The State*, 28 Ala. 71; *Johnson v. The State*, 29 Ala. 62. (3.) The court erred in permitting the prosecution to go into an investigation of the merits or particulars of the former difficulty between the deceased and some of the defendants.—*Gray v. The State*, 63 Ala. 66; *Commander v. The State*, 60 Ala. 1; *Faire v. The State*, 58 Ala. 74; *Mundin v. Bailey*, 70 Ala. 63. (4.) Evidence of another distinct, substantive offense, is not admissible.—*Gassenheimer v. The State*, 52 Ala. 314. (5.) That the third charge ought not to have been given, see *Boddie v. The State*, 52 Ala. 322; *Thompson v. The State*, 47 Ala. 37; *Corbett v. The State*, 31 Ala. 329; *Davidson v. The State*, 63 Ala. 432; *Childs v. The State*, 58 Ala. 349. (6.) On the facts disclosed by the record, the sixth charge is erroneous.—*Childs v. The State*, 58 Ala. 349; *Hall v. The State*, 40 Ala. 698. (7.) The measure of proof necessary to establish an *alibi*, as stated in the seventh charge, is too exacting, especially as applied to the facts of this case.—*Com. v. Choate*, 105 Mass. 459; *Com. v. Webster*, 5 Cush. 295; *State v. Hardin*, 46 Iowa, 623; *State v. Hamilton*, 57 Iowa, 596.

H. C. Tompkins, Attorney-General, for the State.—(1.) Whether or not there was a conspiracy, or community of purpose among the several defendants, was a question of fact to be determined by the jury; and evidence having been introduced tending to establish such conspiracy, the acts and declarations of each party, in furtherance of the common purpose, are competent evidence against all.—*Johnson v. The State*, 29 Ala. 62; *Scott v. The State*, 30 Ala. 503; Whart. Crim. Ev. § 698; *Wendover v. Robbins*, 30 Vermont, 4; 7 Ohio St. 476. (2.) It was permissible to prove, not only the

fact that the parties had had a previous difficulty, but the general circumstances thereof, and the acts of the several parties, so far as they might tend to show the feeling between the deceased and any of the defendants.—*Gray v. The State,* 63 Ala 66. (3.) An *alibi*, as a defense in a criminal case, rests on the self-evident truth, that a person can not be in two places at one and the same time ; and the sufficiency of the evidence to establish such defense, in any given case, depends upon its fully covering and accounting for the defendant's presence at another place, during such a period of time as would render it physically impossible that he could have been at the place where the crime was committed, at the time it was committed. This is the proposition asserted by the seventh charge, and it neither shifts the burden of proof, nor infringes the rule as to a reasonable doubt.—Burrill's Cir. Ev. 511–14; *Creed v. People,* 81 Illinois, 565 ; *Briceland v. Com.,* 2 Green's Crim. R. 523.

STONE, J.—In charges of crime which, in their nature, may be perpetrated by more than one guilty participant, if there be a previously formed purpose or conspiracy to commit the offense, then the acts, declarations and conduct of each conspirator, done or expressed in promotion of, or in relation to the object or purpose of such conspiracy, become the act, declaration, or conduct of each co-conspirator, and may be given in evidence against him. But, to allow such testimony to go to the jury, a foundation must be laid by proof sufficient, in the opinion of the judge presiding, to establish, *prima facie,* the existence of such conspiracy.—1 Greenl. Ev. § 111 ; Whar. Cr. Ev. § 698; Stephens' Dig. Ev. 46 ; *Browning v. State,* 30 Miss. 656. But, when such testimony is received under this rule, it does not necessarily establish the conspiracy and common guilt of those not actively participating in the criminal act. The question, whether sufficient to establish the common guilt, is one for ultimate decision by the jury.

The present record states that it contains all the evidence, and it fails to show a *prima facie* case of conspiracy between any two of the parties indicted, to take the life of deceased, or do him other injury. The most it tended to show was, that two or more of them had malice against him, probably for alleged differing reasons. The Circuit Court erred in admitting evidence of acts or declarations, or prosecutions, of parties not on trial. This ruling does not exclude evidence of malice, or motive on the part of appellant, to commit the alleged crime, if there be such evidence.

It is not necessary we should consider the irregularity of

summoning more jurors than the statute allows.—Code of 1876, § 4874. That question will not probably arise again.

An attempt was made to prove an *alibi*, in the trial of this cause. The charge No. 7, asked by the solicitor, and given by the court, can not be maintained. It asserts, that it is essential to the sufficiency of such defense, that it cover and account for so much of the time of the transaction in question as to render it impossible the prisoner could have committed the imputed act. This lays down too exacting a rule. The testimony in this cause shows, that the deceased came to his death by a gun-shot wound, fired at short range. Whoever did the fatal deed, was in close proximity to the deceased. Without it, he could not, and did not fire the shot. In the absence of conspiracy shown between the defendant and another, to take Hanna's life, followed by the homicide at the hands of that other, then the defendant can not be guilty, unless, *at the time*, he was near enough to do the deed. Proximity—opportunity— is a necessary, indispensable condition of his guilt. It is not necessary that the prosecution should, in the first instance, prove such proximity, if the testimony is otherwise sufficient. But, opportunity being an indispensable factor in the proof of defendant's guilt, if, on the whole testimony, this be left in reasonable doubt, then defendant's guilt is not established beyond a reasonable doubt.—Whar. Cr. Ev. § 333; *French v. The State*, 12 Ind. 670; *Kaufman v. The State*, 49 Ind. 248; *Howard v. The State*, 50 Ind. 190; *Line v. State*, 51 Ind. 172; *Miller v. People*, 39 Ill. 457; *Otmer v. People*, 76 Ill. 149; *Stuart v. People*, 42 Mich. 255; *Com. v. Choate*, 105 Mass. 451; *State v. Waterman*, 1 Nev. 543; *Pollard v. State*, 53 Miss. 410; *Chappel v. State*, 7 Cold. (Tenn.) 92.

In the state of the proof shown in this record, after excluding, as we have done, the acts and declarations of others not on trial, the facts do not present a case in which charge No. 6, asked for the prosecution, should have been given.—*Childs v. The State*, 58 Ala. 349. Charge 3 is, perhaps, subject to criticism, in view of the testimony found in this record.

The proof in reference to a previous difficulty was only admissible as tending to show malice, or a motive for doing the deed. In such case, it is the fact of such difficulty, and its gravity, or the contrary, which may be proven. Its merits, or the particulars, can not be given in evidence. If they were, the tendency would be to divert the minds of the jurors from the issue they are impanelled to try, to the merits of the former quarrel. Too much latitude was allowed in this case. Nothing should have been received, which tends to show who was in fault in the former difficulty.—*Gray v. State*, 63 Ala. 66; Clark's Cr. Dig. § 375.

2

[Williams v. The State.]

The judgment of the Circuit Court is reversed, and the cause remanded. Let the prisoner remain in custody, until discharged by due course of law.

## *Indictment for Murder.*

