68 So.2d 53

### SPAIN v. STATE.

#### 8 Div. 323.

Court of Appeals of Alabama.

Aug. 11, 1953.

Rehearing Denied Sept. 8, 1953.

Si Garrett, Atty. Gen., and L. E. Barton,
Asst. Atty. Gen., for the State.

Smith, Johnston & Butler, Huntsville,
for appellant.

**HARWOOD, Judge.**

This appellant was indicted for murder in the second degree. The jury returned a verdict of guilty of manslaughter in the first degree and fixed appellant's punishment at imprisonment in the penitentiary for one year.

The evidence introduced in the trial below tended to show that the deceased's wife, Flossie May Lacey, had first married the deceased. She divorced the deceased and married the appellant. She divorced the appellant and again married the deceased.

On the night of the shooting the appellant had gone to a road house in Madison County called the Green Lantern. The deceased and his wife arrived at the Green Lantern. The appellant left the building.

The deceased, who was drunk, on several occasions during the night left the building and went to a truck of a type owned by the appellant. He attempted to gain entrance to the cab of the truck, but was pulled away by other members of his party. On one of these occasions he was heard to say, "Open the door Red, I want to talk to you." On his last visit to the truck the deceased was cursing, and making strenuous efforts to gain entrance to the truck cab when an explosion like the noise of a gun was heard and deceased fell down beside the truck.

He was bleeding from a wound in the chest.

The deceased's wife accompanied him in the ambulance to the hospital. He was taken to the emergency room and the next day she saw him dead in a casket.

Mr. Herschel White, a deputy sheriff of Madison County, testified that on the night in question the appellant came to the county jail in a truck. He was carrying a shotgun.

Over appellant's objection that the corpus delicti had not been proven this witness was permitted to testify, after the voluntary character of the statement was shown, that appellant had stated that he had just shot a man at the Green Lantern.

Clearly this statement by the appellant was properly received in evidence.

In a murder prosecution, proof of the corpus delicti includes proof of the victim's death and proof that death was caused by some person's criminal agency. Moss v. State, 32 Ala.App. 250, 25 So.2d 700, certiorari denied 247 Ala. 595, 25 So.2d 703; Shelton v. State, 217 Ala. 465, 117 So. 8; Ducett v. State, 186 Ala. 34, 65 So. 351; Pearce v. State, 14 Ala.App. 120, 72 So. 213. It is not required that the corpus delicti be proved by direct evidence; it may be proved by circumstantial evidence as well. Phillips v. State, 248 Ala. 510, 28 So. 2d 542; Rowe v. State, 243 Ala. 618, 11 So. 2d 749; McDowell v. State, 238 Ala. 101, 189 So. 183; Inman v. State, 23 Ala.App. 484, 127 So. 262. The requirement that, in a murder prosecution, the State must show not only the fact of the victim's death, but also that death was caused by the criminal agency of another, is satisfied when it appears that death was not the result of accident or natural causes, or of suicide. Shelton v. State, supra.

Dr. Robert C. Bibb testified that on the night in question he was at the Huntsville Hospital. About 1:00 a. m. he saw a male patient who was suffering from a wound in the chest. The doctor had never seen the man before. In the doctor's opinion this wound was caused by a blast from a gun. The man was dead when he examined him.

Over appellant's objection Dr. Bibb was permitted to testify that he knew that the medical history of the patient designated him as Odie Lacey.

■ After both the defense and the State had rested the court permitted the case to be reopened and the State introduced the medical record of the Huntsville Hospital pertaining to Odie Lacey to be received in evidence. These records were introduced through the custodian of the records of the hospital and were properly received in evidence. Section 415, Title 7, Code of Alabama 1940.

These records, bear the signature of Dr. Bibb, and the portion admitted into evidence shows that Odie Lacey was admitted to the hospital at 1:00 a. m. as an emergency case on September 21, 1951.

It further appears that the appellant testified that on September 21, 1951 he shot the deceased with a shotgun at the Green Lantern.

■ We pretermit consideration of whether the court erred in permitting Dr. Bibb to testify, prior to the introduction of the record itself, that he knew that the medical record showed that the man he examined was Odie Lacey, for the reason that the later introduction of the hospital record rendered competent Dr. Bibb's testimony. See Ala.Dig., Crim.Law, ☞1169(4) for innumerable authorities illustrating this principle. It further appears from the uncontradicted and uncontroverted evidence that the appellant shot the deceased with a shotgun and that he died shortly thereafter. Dr. Bibb's testimony was merely cumulative of this evidence, and we see no probability of injury to the appellant in the ruling. Sup.Ct.Rule 45, Code 1940, Tit. 7 Appendix.

During the examination of deceased's wife, Flossie May Lacey, she was permitted to testify, over appellant's objections, that she obtained a divorce from the appellant on April 4, 1951; that the appellant, while driving with her on that date told her: "You may not live with me, but I will die and go to hell before you will live with Odie Lacey."

■ The above evidence was clearly admissible as going to show motive. The fact that the accused and deceased were rivals for the favors of the same woman is highly relevant for the light it may shed on jealousy or unrequited love as a motive for the killing. A full discussion of this principle may be found in Senn v. State, 35 Ala.App. 62, 43 So.2d 540.

During the cross examination of the appellant the State was permitted to show that on August 14, 1951 on a certain highway the appellant met the deceased. In this connection the record further shows the following:

"Q. At that time and at that place, Mr. Spain, did you pull a pistol on Odie Lacey?

"Mr. Smith: We object to that and assign the same grounds.

"The Court: Overruled.

"Mr. Smith: We except.

"A. I don't know whether you would call it pull a pistol on him or not. I had one in my hand.

"Q. You had a pistol in your hand? A. Yes, sir.

"Q. Mr. Spain, is this the pistol you had? A. I couldn't say whether it was.

"Q. Was it a pistol like that?

"Mr. Butler: We want to object. That certainly has no bearing on this case. That is not in evidence in this case. It is illegal, incompetent and irrelevant.

"Mr. Smith: And it is asked for the purpose of prejudicing the defendant in the eyes of the jury, and we ask for a mistrial.

"The Court: Overruled.

"Mr. Smith: We except.

"Mr. Butler: And we object to that question.

"Q. Can you identify that pistol? A. No.

"Q. At that time you pointed or presented a pistol to Mr. Lacey at that place?

"Mr. Butler: We object to that question because it calls for a conclusion of the witness as to whether he pointed or presented a pistol.

"Mr. Smith: And on the further ground it might tend to get him to incriminate himself.

"The Court: Overruled.

"Mr. Smith: We except.

"A. I didn't point it at him. I just had it in my hand.

"Q. You had the pistol in your hand? A. Yes, sir.

"Q. Did you have a conversation with Mr. Lacey at that time?

"Mr. Butler: We object to that, as to any conversation that might have occurred. It is too remote and has no bearing on the issues.

"The Court: Overruled.

"Mr. Butler: We except.

"A. No, sir."

When evidence of a former difficulty between a defendant and the assaulted party is offered by the State, it is for the purpose of shedding light on the true conduct of the defendant at the time of the subsequent difficulty for which the accused is on trial. Gray v. State, 63 Ala. 66; McAnally v. State, 74 Ala. 9. The general rule is stated to be that the details or merits of the former difficulty cannot be gone into, yet sufficient of the details may be brought out as may illustrate the gravity of the former difficulty.

The demarcation between the fact or, highlights of a former difficulty, and its details, is a vague and tenuous division. A measure of discretion should be allowed the trial judge in determining the extent of detailing necessary to picture the gravity of the former difficulty.

In reviewing our decisions on this question, Foster, J., in Sanders v. State, 242 Ala. 532, 7 So.2d 483, 484, summarized many of the decisions as follows:

"The State may introduce evidence of a prior difficulty between defendant and the assaulted party in which defendant was 'concerned in an assault on him with a knife, whereby he was severely cut in the neck, a short time before the assault charged in the indictment.' Such not being a statement of 'the details or particulars' of that difficulty. Gray v. State, 63 Ala. 66.

" 'The fact of such difficulty, and its gravity, or the contrary' may be shown. McAnally v. State, 74 Ala. 9, 17. And 'the fact that on the day before the killing deceased attacked defendant with scissors, accompanying the attack with a threat * * * was not going into the details or merits of the altercation.' Watts v. State, 177 Ala. 24, 59 So. 270, 272. And 'that on that day deceased shot at the defendant (and at another time) drew a "gun" on the defendant (with threats to kill him) were matters the defendant was entitled to have admitted in evidence,' and were not of too much detail. Nelson v. State, 13 Ala.App. 28, 68 So. 573.

"And when defendant offered to prove that in a previous difficulty 'the deceased was armed with a gun and made a hostile demonstration by pointing the gun at the defendant,' the court was held to have erred in rejecting this evidence after defendant had offered evidence tending to show that decedent was the aggressor. Buf-

falow v. State, 219 Ala. 407, 122 So. 633, 634. To like effect is Stinson v. Richardson, 239 Ala. 161, 194 So. 508. Compare Harkness v. State, 129 Ala. 71, 30 So. 73."

 A review of the testimony excerpted above shows that actually the only details brought out as to the former difficulty were that the appellant, on that occasion, held a pistol in his hand, and that he did say something to the deceased. The remaining answers were innocuous as to any real facts. We do not think therefore that the facts produced as to the former difficulty were of sufficient extent as to be considered violative of the rule against going into the details of a former difficulty.

As before stated, after both the State and defense had rested the court permitted the case to be reopened on motion of the Solicitor.

Among the witnesses then presented was the ambulance attendant who had assisted in removal of the deceased from the scene of the shooting to the Huntsville Hospital, a distance of some seven miles.

Over appellant's objections this witness was permitted to testify that when he observed the deceased's body in the emergency room in the hospital the deceased had a burned cigarette butt between the fingers of one hand, and a dollar bill in the other hand.

This testimony was received in evidence apparently on the Solicitor's insistence that it was in rebuttal to evidence offered by the defense.

This contention is unsound. None of the defense evidence was directed toward showing that the deceased was armed at any time during the night. In fact the appellant testified that at the time he shot the deceased he knew he had nothing in his right hand and he did not think he had anything in his left hand.

Clearly, since the deceased had been removed some seven miles from the scene of the shooting, and some time had elapsed, the testimony of this witness cannot be considered of the res gestae. No theory occurs to us on which this evidence could properly be admitted.

We are not however willing to reverse this cause because of the rulings in this instance. We do not see how this evidence could probably have injured the accused in his substantial rights. Sup.Ct. Rule 45. Its only tendency is to establish in a remote and speculative way that the deceased had no deadly weapon in his hands at the time he was killed. This fact was established by the undisputed evidence.

As further bearing on the improbability of injury to the appellant because of the admission of the above evidence is the degree of punishment imposed by the jury. The evidence presented by the State, if believed by the jury under the required rule, was abundant in its tendencies sustaining the verdict manslaughter in the first degree, and indeed would have supported a verdict of murder. Yet, the punishment imposed was the minimum fixed by statute for manslaughter in the first degree.

Affirmed.