263 So.2d 716

**Bobby Lee DUBOSE**

v.

**STATE.**

I Div. 160.

Court of Criminal Appeals of Alabama.

May 23, 1972.

Rehearing Denied June 13, 1972.

Thomas E. Bryant, Jr., Mobile, for appellant.

William J. Baxley, Atty. Gen., and John A. Yung, IV, Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Mobile County, Alabama, returned indictment charging Bobby Lee Dubose with murder in the first degree. Verdict, judgment, and sentence of the trial court was for life imprisonment.

The State's evidence established that on the evening of July 30, and the early morning hours of July 31, 1970, the appellant, Bobby Lee Dubose, had gone to the Patio Club, a night spot in Mobile County. Several witnesses observed that the appellant, seated at a bar, was having a discussion with a white man who was dressed in Bermuda shorts and had a tattoo on his arm. One of the witnesses stated that she thought the white man was a sailor. Three witnesses observed the appellant talking with the deceased, a white man named Aaron G. Hollingshead, just outside the entrance to the Patio Club in the parking lot area, near closing time at about 2:00 a. m. Two witnesses stated that they saw the appellant drive up in an automobile with two other men, while they were walking home, and go around to the front of the car and start pulling papers from what appeared to be a wallet. They testified they saw the appellant going through the billfold and heard him state loudly, "All of this and not a God damn thing." One of the witnesses, Linda Miles, stated that the white man had just broken a twenty dollar bill shortly before leaving the Patio Club, and that she observed the white man, dressed in Bermuda shorts, standing outside talking with appellant and one other man on the parking lot as she walked away. She also stated she saw the appellant and his brother, Benny Dubose, standing outside with the appellant and the white man; and that she later saw the appellant take papers from the billfold, and heard him say loudly that there was nothing in it; and that he was going back to be sure that the man was dead; that she saw the appellant striking the body of the deceased with a club, who was lying on the ground in the parking lot. She asked one of the men to stop him from beating the man.

Another witness, Daniel C. Poole, who had driven off in his automobile with some

other people about closing time at the Patio Club, saw the appellant beating the deceased, a white man, with a board, and that the man was lying down, and described the stick as a broken 2 x 4. Poole also testified that the appellant got into his car and drove with him to the Roger Williams Housing Project where he asked Poole to stop the car, that his hand was hurting. He stated the appellant then got out of the car in the Housing Project parking area and walked in front of the car and began pulling papers from a wallet. He saw some type of card with a man's picture on it and a seaman's card fall to the ground, then heard the appellant state, "Ain't a God damn thing in here." He then took the appellant and a woman companion, another man and his companion, to another night spot where he let them out.

Dr. Brian K. Montgomery, a pathologist in Mobile, testified that the hemorrhaging of the brain and traumatic shock to the head, in his opinion, were the causes of death; that the wounds on the body of the deceased, who had been identified as Aaron G. Hollingshead, were inflicted by some kind of blunt instrument; and that the body of the deceased contained an elevated alcohol content in the blood stream.

Two witnesses, who were employed at the Mobile Housing Board, testified as to a photograph, a seaman's card, and several other papers lying in the Housing Authority parking area on the morning of July 31, 1970, placing them in an envelope, and notifying the Mobile Police Department. Mobile Police Captain Donald Riddle testified that he picked up the papers at the Housing Authority and had them examined for fingerprints, and that otherwise the papers had been in his possession and control. The documents contained a driver's license, photograph, and Naval card of the deceased, Aaron G. Hollingshead.

The State next presented the testimony of Detective Sergeant William Mingus of the Criminal Investigation Section who testified that he did investigate the death of a white man which occurred at the Patio Club parking lot on July 30, 1970. He identified the deceased as a white male, stocky, by the name of Aaron G. Hollingshead. He testified that he found some boards, a pair of eye glasses, and a cigarette lighter in the vicinity of the Patio Club parking area, and also a Ford automobile, pink and off-white in color, from which he obtained a letter addressed to Mr. Aaron G. Hollingshead from the Department of Health, Education, and Welfare, pertaining to a disability claim under Social Security. The letter was dated June 23, 1970. The deceased had worn Bermuda shorts; that there was blood about the head and on the ground; and that the man wore dark brown loafers and socks.

At the conclusion of the State's evidence, the appellant moved to exclude the State's case on the grounds it failed to make out a prima facie case in that the corpus delicti was not proven because of the failure to identify the deceased, Aaron G. Hollingshead.

Appellant's testimony was in the nature of an alibi offered through his girl friend, his brother, and himself, to the effect that the deceased was still alive when they left the Patio Club parking area, and that the deceased was still standing talking with Bobby Soul when they left with Poole, who drove them across town to another night spot where they purchased some wine and then went to their home. He denied striking the deceased and stated that deceased was still alive when he last saw him.

The appellant's brother stated that he had struck the deceased after the deceased struck him outside the club; that he left then with the appellant as the deceased was fighting with Bobby Soul.

This Court, in Spain v. State, 37 Ala. App. 311, 68 So.2d 53, cert. denied 259 Ala. 606, 68 So.2d 58, laid down the following criteria pertaining to proof of the corpus

delicti and the chain of evidence proving it. From *Spain:*

"In a murder prosecution, proof of the corpus delicti includes proof of the victim's death and proof that death was caused by some person's criminal agency. Moss v. State, 32 Ala.App. 250, 25 So.2d 700, certiorari denied 247 Ala. 595, 25 So.2d 703; Shelton v. State, 217 Ala. 465, 117 So. 8; Ducett v. State, 186 Ala. 34, 65 So. 351; Pearce v. State, 14 Ala. App. 120, 72 So. 213. It is not required that the corpus delicti be proved by direct evidence; it may be proved by circumstantial evidence as well. Phillips v. State, 248 Ala. 510, 28 So.2d 542; Rowe v. State, 243 Ala. 618, 11 So.2d 749; McDowell v. State, 238 Ala. 101, 189 So. 183; Inman v. State, 23 Ala. App. 484, 127 So. 262. The requirement that, in a murder prosecution, the State must show not only the fact of the victim's death, but also that death was caused by the criminal agency of another, is satisfied when it appears that death was not the result of accident or natural causes, or of suicide. Shelton v. State, supra."

We believe that the chain of evidence as set forth above established that the deceased suffered head wounds from blows administered from a blunt instrument, resulting in his death. The 2 x 4 found at the scene and the broken eye glasses tie in clearly with the physician's testimony as to the broken jaw and nose. This evidence was ample in its tendencies to satisfy the burden cast upon the State to establish the corpus delicti. Hence, the motion to exclude the State's evidence was properly denied. McCall v. State, 262 Ala. 414, 79 So.2d 51; Gaddis v. State, 39 Ala.App. 630, 106 So.2d 268.

We have carefully examined the entire record in this cause, consisting of some 398 pages, in accordance with Title 15, Section 389, Code of Alabama 1940, Re-compiled 1958, and find no error therein. The judgment of conviction is therefore due to be and the same is hereby

Affirmed.

PRICE, P. J., and CATES, ALMON, and HARRIS, JJ., concur.