317 So.2d 570

Isreal **JENNINGS**

v.

**STATE.**

**6 Div. 819.**

Court of Criminal Appeals of Alabama.

May 27, 1975.

Rehearing Denied June 17, 1975.

Ralph C. Burroughs, Public Defender, Tuscaloosa, for appellant.

**594**

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The appellant was indicted for the first degree murder of one Wayman Marshall by shooting him with a pistol.

Upon the filing of a petition requesting youthful offender treatment, the trial court directed that the parole and probation officer of Tuscaloosa County make an investigation, and report the findings at a subsequent date set for hearing on said motion. After full explanation of the appellant's rights, the petition was denied. The appellant was then duly arraigned, and entered a plea of not guilty. Following a jury trial, the appellant was found guilty of murder in the first degree, and punishment was set at life imprisonment in the penitentiary.

Dr. Earl Glenn testified that he was a practicing physician in Tuscaloosa, and served as County Coroner. He testified that on May 19, 1974, he examined the body of one Wayman Marshall in the emergency room of the Druid City Hospital between 3:30 and 4:00 p. m., and found that the deceased had a small hole in the left side of his chest, which was in keeping with a bullet wound. He testified that the cause of death was the result of the injury and shock from the small bullet wound on the left side of the chest.

Mrs. Annie Jean Hill testified that she lived at 24 Taylor Circle in Tuscaloosa, that she saw the deceased and his wife come to her home on the early part of the afternoon of May 19, 1974, and play basketball in the rear of her home. She stated that she had a basketball goal there, and that a number of neighborhood children had come over to play. She stated that she saw the appellant, Isreal Jennings, standing, talking with his brother, Cleveland Jennings, and that later she saw the appellant talking with the deceased, Wayman Marshall. She stated that she saw a tussle involving the wife of the deceased, one Jachito Marshall, and heard the appellant ask the deceased, "what he was going to do about it." She stated she saw the appellant strike the deceased with his fist, then saw the appellant draw a gun from a holster, and say, "I will shoot your 'MF' brains out" [R. p. 47]. She testified that she ran to telephone the police, that as she was dialing the number, she heard a shot, and subsequently saw the deceased run from her backyard toward the house where he lived across the street; that a few minutes thereafter she saw several people bringing the deceased out of the house and putting him into an automobile. She testified that the appellant and the deceased had married sisters.

Mrs. Rosy Lee Washington testified that she lived at 36 Taylor Circle in Tuscaloosa. She testified that she was the aunt of the wives of both the appellant and the deceased. She stated that on the afternoon of May 19, 1974, she was at home, and the deceased came running to her home after playing basketball across the street and told her he was hurt. She said she asked,

"Are you cut?" He replied, "No, I am not cut, I am shot, Isreal Jennings shot me." She testified that some other people helped carry the deceased to the hospital.

Bertha Hill, age seventeen, testified that she lived at 24 Taylor Circle in Tuscaloosa; that she was present in the backyard when a basketball game was in progress in the rear of her home. She testified that both the appellant and the deceased were present, along with some other people who lived in the neighborhood. She testified that the appellant was calling the deceased's wife names, and asked the deceased, "what he was going to do about it"; that later, while the basketball game was in progress, she heard the appellant state to the deceased that "he shot basketball like a sissy." She stated that words were exchanged, and she saw the appellant hit the deceased in the mouth with his fist, that as the deceased was bending down, she saw the appellant strike him on the neck with a pistol, that she saw the appellant pull the pistol from his holster, point it at the deceased, and fire it. She stated that she did not see anything in the deceased's hands at the time he was shot. She testified that, later that afternoon, she saw the appellant in his brother's yard with the same pistol in his hand that he had at the time of the shooting. She further testified that some eight or ten boys were playing basketball when the shooting occurred.

Police Investigator Shirley Fields testified that he went to the scene of the homicide about 3:40 p. m. on the afternoon of May 19, 1974, that he returned the following day, May 20, 1974, and made photographs and a diagram. He testified that on May 21, 1974, he accompanied Officer Barry Hewitt when they found a .22 caliber pistol and holster, approximately 300 yards from 24 Taylor Circle, lying under some pine straw, near a pine tree. He testified that the pistol contained three live shells, and one spent shell casing.

State Toxicologist Bob Johnson's report was stipulated into evidence and showed that the deceased, Wayman Marshall, died as a result of shock and hemorrhage following a gunshot wound to the area of the chest, which punctured the aorta.

The appellant's motion to exclude the State's evidence was overruled.

The appellant, Isreal Jennings, took the stand and testified that he was only five feet, four inches tall, that he was eighteen years of age, and that the deceased, Wayman Marshall, was twenty-seven, and somewhat taller than he. He testified that they were brothers-in-law, having married sisters. He testified that they had gone to the rear of 24 Taylor Circle, in Tuscaloosa, on May 19, 1974, to play basketball, and that he had told the deceased that "he shot basketball like a woman." He stated that the deceased then turned to him and said, "he wasn't no woman, and would prove it," then slapped him in the mouth. The appellant then stated that he hit the deceased with his fist, causing the deceased to fall back, that the deceased then reached down and grabbed a bottle, and started toward him. He stated that the deceased told him he was "going to knock his damned brains out," and came toward him with the drink bottle. He testified that he then pulled the pistol, pointed it at the deceased's feet, and told him to stop. He testified that he then pulled the pistol up and fired once in the direction of the deceased to stop him.

The State then called Bennie Brown, who testified that he was present on May 19, 1974, in the rear of the Hill house, at the basketball game, when the appellant fired at the deceased. He testified that there was nothing in the deceased's hands at the time of the shooting. He admitted, however, that the two had been arguing prior to the shooting.

The State also called Harry Jemison, who testified that he was not present at the time of the shooting on May 19, 1974,

but shortly thereafter he was present at the home of Cleveland Jennings, the brother of the appellant, when he heard the appellant state to the deceased's wife, when asked why he shot the deceased, "I would shoot you too."

## I

This Court, in *Spain v. State,* 37 Ala. App. 311, 68 So.2d 53, cert. denied 259 Ala. 606, 68 So.2d 58, laid down the following criteria pertaining to proof of the corpus delicti and the chain of evidence proving it. From *Spain*:

"In a murder prosecution, proof of the corpus delicti includes proof of the victim's death and proof that death was caused by some person's criminal agency. *Moss v. State,* 32 Ala.App. 250, 25 So.2d 700, certiorari denied 247 Ala. 595, 25 So.2d 703; *Shelton v. State,* 217 Ala. 465, 117 So. 8; *Ducett v. State,* 186 Ala. 324, 65 So. 351; *Pearce v. State,* 14 Ala. App. 120, 72 So. 213. It is not required that the corpus delicti be proved by direct evidence; it may be proved by circumstantial evidence as well. *Phillips v. State,* 248 Ala. 510, 28 So.2d 542; *Rowe v. State,* 243 Ala. 618, 11 So.2d 749; *McDowell v. State,* 238 Ala. 101, 189 So. 183; *Inman v. State,* 23 Ala.App. 484, 127 So. 262. The requirement that, in a murder prosecution, the State must show not only the fact of the victim's death, but also that death was caused by the criminal agency of another, is satisfied when it appears that death was not the result of accident or natural causes, or of suicide. *Shelton v. State,* supra."

■ The evidence was ample in its tendencies to satisfy the burden cast upon the State to establish the corpus delicti. Therefore, the motion to exclude the State's evidence was properly overruled. *McCall v. State,* 262 Ala. 414, 79 So.2d 51; *Dubose v. State,* 48 Ala.App. 261, 263 So. 2d 716, and cases therein cited.

## II

During the opening statement to the jury, the following occurred [R. pp. 33–34]:

"MR. ANDRES: Judge, I would like to have with me during the trial of the case the mother of the deceased and the investigators who investigated the case and since the coroner, Dr. Glenn, is here and will be the first witness, I would like to have him excused.

"MR. BURROUGHS: We have no objection to the police officers or Dr. Glenn. We do object to the deceased's mother being in the courtroom. That is calculated for nothing but—

"MR. LACKEY: We object to the argument.

"THE COURT: Overrule.

"MR. BURROUGHS: We object and move for a mistrial. This jury was not qualified to Mr. Lackey being in this case and Mr. Lackey just entered an objection.

"MR. LACKEY: My name is on the indictment. They have heard my name.

"MR. BURROUGHS: I didn't qualify the jury to Mr. Lackey's participating. If he is going to participate, let him be qualified like all the rest of us. We move for a mistrial.

"THE COURT: Overrule.

"MR. BURROUGHS: Except.

"THE COURT: All right, gentlemen, you may state your case to the jury."

The appellant contends that the overruling of his motion for a mistrial, shown above, was prejudicial error. We do not agree.

■ In this cause, no request was made to re-examine the jurors, nor did ap-

pellant's counsel ask the court to inquire as to any acquaintanceship, or connection, that Mr. Lackey might have with the members of the jury. Thus, there was no showing of any prejudice or disadvantage to the appellant by reason of Mr. Lackey's appearance. This Court judicially knows that Mr. Lackey is the District Attorney for the Sixth Judicial Circuit of Alabama (Tuscaloosa County), and he is responsible for bringing criminal cases to trial. *Johnson v. State,* 13 Ala.App. 140, 69 So. 396, cert. denied 193 Ala. 682, 69 So. 1020, and *Jones v. State,* 16 Ala.App. 154, 75 So. 830.

■ Such motion to disqualify the State's attorney is addressed to the sound discretion of the trial court, and will not be granted in the absence of a showing of prejudice. *Hall v. State,* 44 Ala.App. 406, 210 So.2d 852; *McCain v. City of Montgomery,* 38 Ala.App. 568, 92 So.2d 678, cert. denied 265 Ala. 551, 92 So.2d 682.

Mr. Justice Stakely, in affirming the opinion of the former Court of Appeals, in *Owens v. State,* 40 Ala.App. 36, 109 So.2d 141, stated as follows in *Owens v. State,* 268 Ala. 506, 109 So.2d 144:

"There was no showing in this case of any disadvantage accruing to the defendant by reason of the appearance of the special prosecutor in this case. Hence there was no abuse of discretion in denying the motion for a mistrial and discharge of the jury."

It is clear in reviewing this record that the appellant's motion was properly overruled by the trial court. *Handley v. State,* 214 Ala. 172, 106 So. 692; *Streeter v. State,* 278 Ala. 272, 177 So.2d 826, and *Owens v. State,* supra.

Consistent with our duty under Title 15, Section 389, Code of Alabama 1940, we have searched this record and find no error. The judgment appealed from is hereby

Affirmed.

All the Judges concur.