261 So.2d 438

Rudolph **WALTON**

v.

**STATE.**

2 Div. 88.

Court of Criminal Appeals of Alabama.

April 18, 1972.

**20**

Adams, Baker & Clemon, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

TYSON, Judge.

The appellant, Rudolph Walton, was indicted for assault with intent to murder. Jury trial resulted in verdict and judgment of five years imprisonment as punishment.

The prosecuting witness, Ivory Delano Chambers, testified that the appellant, Rudolph Walton, shot him three times with a twenty-two caliber pistol while he was seated at a table in the Black Cat, a nightspot in Greene County, Alabama. The bullets struck Chambers in the head, side and arm, resulting in his hospitalization. On cross-examination Chambers admitted having a fight some six days previously at the Green Lantern nightspot with the appellant. He denied striking the appellant with a beer bottle on this occasion or threatening the appellant then or subsequently.

Four other witnesses for the State substantiated Chambers' testimony that he was seated at a table when the appellant came in, walked over to the table and began a conversation. Two of these witnesses stated they tried to get the appellant to put his gun up, that he would get himself in trouble. Two others stated they heard the appellant state, "Don't you know you did me wrong?" The prosecuting witness replied, "I thought it was all over with."

The appellant presented testimony of a doctor in Greene County who verified having treated the appellant for an eye injury, which could have been produced by a blow from a fist some six days prior to the day of the incident in question.

The appellant testified that six days prior to May 27, 1971, he had a fight with Ivory Chambers in which his eye and side

were injured. Appellant claims he heard Chambers state at the end of the fight, "I'm going to kill you yet." The next time he saw Chambers was at the Black Cat, which was the date he shot him, and that at that time Chambers threatened him. The appellant testified that at the fight at the Green Lantern, "He kicked me in my side. The way it started was he hit me in the eye with a beer."

Appellant raises two contentions concerning his trial.

I

■ Appellant argues that he erroneously was prevented at trial from showing what instrument or weapon was used by the prosecuting witness against the appellant at the prior difficulty. This alleged error occurred during cross-examination of the appellant. From the record:

"CROSS EXAMINATION BY MR. ADAMS:

"Q Mr. Chambers, you recall the defendant being with you at the Green Lantern, don't you?

"A The defendant being with me?

"Q Yes.

"A He wasn't with me. I mean, you know, we got to fighting.

"Q All right, did you hit him in the eye with a beer bottle?

"MR. BOGGS: We object to any details.

"A No.

"MR. BOGGS: He could say that they had a fuss six days before that, but any details of it we don't think is admissible, your Honor.

"MR. ADAMS: Judge, I think it's part of the res gestae.

"MR. BOGGS: Six days before, we don't think so.

"THE COURT: Wait just one minute. You can show any threats, if any, that were made at that particular time by either party. You can show that there was this fight previously, but that's as far as you can go. You can't go into details of it.

"Q All right. Did you have a fight with the defendant some six days before?

"A Yes.

"MR. ADAMS: Judge, we'd like to take exception on that.

"THE COURT: All right.

"Q Did you hit him?

"MR. BOGGS: We object to any details, your Honor. You just got through ruling he couldn't go into any details.

"THE COURT: Wait just one minute. I will permit him to testify as to whether or not blows were struck.

"Q Were there blows struck?

"A Blows? You talking about licks passed?

"Q Yes.

"A Yes.

"Q After that particular fight at the Green Lantern, will you state whether you had any contact with the defendant after that?

"A Nope.

"Q Didn't you make threats in the community that you were going to kill him?

"A Nope.

"Q You did not?

"A No. I didn't have any reason.

"Q You state positively to us that you didn't say anything to anybody after that time concerning this fight that you had out there?

"A If you're talking about fighting . . .

"MR. BOGGS: Unless they were threats, anything he said to anybody, that's too broad.

"THE COURT: Yes sir.

"Q I mean threats. Did you make any threats?

"A No.

"Q You did not?

"A Nope.

"Q At the Black Cat Club, Mr. Chambers, who was there at that time?

"A A fellow named Track, James and George Moore and Taylor Jones; a whole lot of people.

"Q Can you name any more that were there?

"A Oh, I can name—I don't know their names."

Specifically the appellant contends that he was not allowed to show that the beer bottle was the instrument with which the appellant was struck in the prior difficulty. After reviewing the record above quoted, together with the testimony presented through the appellant himself and Dr. Joe Bethany, we are of the opinion that the trial court correctly allowed the fact of the prior fight and that there were blows passed to go to the jury. Any threats which were made at this time were also allowed in evidence. When construing the record as a whole, we believe that the issue of the use of the beer bottle as a weapon in the prior difficulty was before the trial jury. Other than this, the specific details of the prior fight were not allowed in evidence. Wright v. State, 252 Ala. 46, 39 So. 2d 395; Alberson v. State, 254 Ala. 87, 47 So.2d 182; Hoomes v. State, 34 Ala.App. 121, 37 So.2d 686; Spain v. State, 37 Ala. App. 311, 68 So.2d 53.

## II

Appellant contends that he was erroneously prevented from showing a prior threat made by the prosecuting witness against the appellant through the testimony of one Jimmy Hunter, a witness for the appellant. From the record:

"Q Had you heard previous to this time that Ivory Chambers had threatened to kill this boy here?

"MR. BOGGS: We object, may it please the Court.

"THE COURT: He may ask if, at a certain [time] and place, he heard a certain statement, and you must go further and show that it was communicated to the other party.

"Q Did you hear Ivory Chambers at any particular place say that he was going to kill the defendant here?

"A No sir, I didn't hear it, but I heard

"MR. BOGGS: We object.

"THE COURT: He said he didn't hear it.

"Q You say you did not hear that?

"A I didn't hear it, but I heard somebody else say . . . .

"MR. BOGGS: We object, and move to exclude what somebody else said.

"THE COURT: Sustain the objection to what somebody else said. It is a question of whether he heard it.

"MR. ADAMS: That's all."

Construing this most favorably to the appellant's contention, we do not believe this testimony, offered through witness Jimmy Hunter, did show an admissible threat inasmuch as the record above affirmatively reflects that the witness in question did not himself hear the threat, *but rather heard someone else say* . . . . Therefore, the trial court correctly sustained the objection on the basis of being hearsay testimony.

We have carefully considered this entire record as we are required to do and find

same to be free from error. The judgment of conviction is therefore due to be and the same is hereby affirmed.

Affirmed.

PRICE, P. J., concurs.

ALMON, Judge (concurring specially).

I agree with the view expressed by Judge Cates in his dissenting opinion. However, I vote to affirm the judgment of conviction because the evidence in question was already before the jury and if there was error in the trial judge's subsequent ruling, I consider it harmless. Tit. 15, § 389, Code of Alabama, 1940, recompiled 1958; Supreme Court Rule No. 45.

CATES, Judge (dissenting).

Assault with intent to murder has as one of its ingredients "malice" as known at common law.

Self defense can arise under the plea of not guilty. The gravity of a former difficulty is relevant to show the degree of apprehension with which a defendant could look upon a hostile demonstration by the victim.

Thus, later cases follow Judge McElroy's suggestion of trial court discretion as to the degree of detail of the former difficulty to be deemed admissible.

Thus, our Supreme Court per Harwood, J., in Wright v. State, 279 Ala. 543, 188 So. 2d 272, has said:

"As observed by Judge McElroy in his work on evidence (The Law of Evidence in Alabama, 2d Ed. Sec. 45.06(5)), the rule enunciated in McAnally v. State, 74 Ala. 9, to the effect that the gravity or lack of gravity of a former difficulty may be proven but that its merits or particulars cannot be shown nor can it be shown who was at fault in the former difficulty, present a rule difficult to administer and to comply with. As stated in Dodd v. State, 32 Ala.App. 504, 27 So.2d 259:

"'The demarcation between the fact, or highlights, of a former difficulty, and its details, is indeed a tenuous and vague division. A measure of discretion should and must be allowed the trial judge in determining the extent of detailing necessary to picture and constitute the fact. Brothers v. State, 236 Ala. 448, 183 So. 433.'

"To the same effect see Spain v. State, 37 Ala.App. 311, 68 So.2d 53; Mahaley v. State, 36 Ala.App. 89, 53 So.2d 594.

"We will not here attempt to review or reconcile the very large number of our cases and those of the Court of Appeals pertaining to whether the facts shown did or did not constitute an excess of detailing, but refer those interested to Judge McElroy's very detailed discussion of these cases to be found in his work above referred to in Section 45.06 et seq.

"We are in accord with the views expressed in the opinions of the Court of Appeals in *Dodd*, *Spain*, and *Mahaley*, supra, to the effect that much be left to the sound discretion of the trial judge as to the limits of detailing a former difficulty. We are unwilling to say in the present instance that the trial court abused its discretion in the rulings made."

To me, a blow to the eye with a beer bottle is far more heinous and hazardous than "blows" or "licks" passing in a scuffle without weapons. That the bottle did not break may be viewed with relief but without minimizing the mental attitude that gave volition to such vitro-violence.

Were our Harmless Error Rule less of a loophole, a different result might be warranted.[1] But I cannot say the ruling ex-

---

1. That the defendant testified, " * * * he hit me in the eye with a beer" (R. 44) is too vague as to what the substance was,

i. e., a liquid or the container. The normal construction indicates the former. Moreover, the thrust of the defense was to

cluding an element vital to self defense was not probably injurious to a substantial right of the defendant. See Supreme Court Rule 45.

Accordingly, since I would vote to reverse the judgment of conviction, I must respectfully dissent.

get the *victim* to admit (or not) that he hit the defendant in the eye with a beer bottle. This differs from what might be argued to be only the defendant's self-serving version.

