54 So.2d 85

**MASSENGALE v. STATE.**

**5 Div. 325.**

Court of Appeals of Alabama.

Aug. 25, 1951.

Teel & Teel, Rockford, for appellant.

Si Garrett, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

PER CURIAM.

The accused stood indicted for manslaughter in the first degree. The trial judge gave the general affirmative charge at defendant's request as to the higher degree of homicide and submitted the cause to the jury on the lesser. The trial resulted in a verdict of guilty of manslaughter in the second degree and the imposition of twelve months hard labor as punishment.

The indictment alleged that the defendant killed Sock Jones by running over or against him with a truck.

The defendant is a young Negro man and the deceased was a white man.

■ The brief of the assistant attorney general is devoted entirely to the insistence that we should consider only the record proper because the certificate of the official

court reporter appears in the record as transcribed by the clerk of the court with the name of the reporter inserted by means of a typewriter.

This identical position was taken in the recent case of Thomas v. State, Ala., 53 So.2d 340. Justice Brown, writing for the court, held that there was no merit in the contention.

The facts appear in the record with only slight contradictions.

At about eight o'clock at night Mr. Jones was walking along the paved highway between the cities of Sylacauga and Rockford. The State's evidence tended strongly to establish that the appellant, while driving down the highway, ran against the decedent and injured him in such manner that death ensued forthwith.

A Negro girl was riding on the seat of the truck with the defendant. She was called as a witness for the State and testified that she was asleep with her head resting on the shoulder of the appellant. The impact awakened her, and she saw an object fall off the right front fender of the truck. After the defendant stopped the truck, she observed the body of the deceased lying about the middle of the highway.

The girl gave no evidence relating to the speed of the vehicle or its position on the road at the time of the collision.

The defendant did not testify in his own behalf. The other witnesses gave no account of observing the truck as it proceeded down the highway. Neither did they see it at the time it struck the pedestrian.

In the main the description of the locale was directed to what the officers and others saw when they visited the scene the next morning.

It appears that the deceased was carrying a small paper bag containing some food scraps for his dogs. The truck was traveling in a southerly direction. The paper bag was found the next morning off the east edge of the highway. Some flakes of paint were observed on the same side. The evidence supports the conclusion that these flakes came from the right front fender of the truck.

A rather large area of bloodstain was near the center of the road. The body of the deceased was moved from this point the night before.

The right front fender of the truck was bent. A comb was also found on the east edge of the highway, but the evidence furnishes no information that this object was ever in the possession of the deceased.

From the nature of the development of the evidence, we conclude that the prosecution was pressed on the theory that the appellant was violating the rule of the road by proceeding on the wrong side of the highway. Does the evidence sufficiently support this theory?

The indentations on the right fender of the truck afford no substantial and reliable proof that the truck was on the wrong side. For aught appearing the deceased may have been walking or standing on the extreme west side of the highway.

The location of the paper bag and the paint flakes to like effect is without evidential potency on the matter of instant concern. These light objects could have been moved from place to place by the wind or passing vehicles during the interval of about twelve hours, or the bag could have been thrown the width of the highway by the deceased when he was struck.

Clearly the position of the body on the highway gives no substantial indication of the place the deceased was when he was first struck.

The witnesses were unable to determine the course of the truck by any discernible tracks or skid marks.

"Manslaughter in the second degree is defined as the unlawful killing of another human being, without malice and without the intent to kill or to inflict the injury resulting in death, but accidentally committed by the accused while he was doing an unlawful act amounting to a misdemeanor, or accidentally committed by the accused while he was doing a lawful act, but in a grossly negligent or improper manner." Jones v. State, 21 Ala.App. 234, 109 So. 189, 191. See also, Wilson v. State, 32 Ala.App. 591, 28 So.2d 646;

Lightfoot v. State, 33 Ala.App. 409, 34 So.2d 614.

We have carefully considered the evidence in this case, sitting en banc, and we are forced to the conclusion that the proof, or fair inferences therefrom, fails to meet the burden imposed by law upon the State to sustain a conviction for the offense charged in the indictment.

To cite authorities to support our view would only lead to the pronouncement of the familiar doctrine applicable in all criminal prosecutions. That is to say, there must be substantial evidence tending to prove all elements of the charged offense, a mere scintilla of evidence, in view of the presumption of innocence, being insufficient.

It is also well established that a conviction in a criminal case cannot rest on surmise or conjecture.

The defendant was due the general affirmative charge. For its refusal, error must be predicated.

The other presented questions, of course, need not be considered.

The judgment of the court below is ordered reversed and the cause remanded.

Reversed and remanded.