155 So.2d 349

**Jack Lee TOUCHSTONE**

**v.**

**STATE.**

**3 Div. 141.**

Court of Appeals of Alabama.

June 18, 1963.

**142**

Hugh M. Caffey, Jr., Brewton, for appellant.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment contained two Counts. The first charged manslaughter in the first degree for the killing of Joseph Winston Cumbie. The second charged unlawfully leaving the scene of an accident. The trial resulted in a conviction of manslaughter in the second degree under Count One, with punishment fixed at 30 days' imprisonment in the County jail and a fine of $500.00, and conviction under Count Two with a fine of $250.00 as punishment for said offense.

About 4:30 A. M., on August 9, 1961, the bodies of two young boys, Joseph Winston Cumbie and another, were found lying on the east side of highway 21 in front of R. E. Vickery's driveway about three miles North of Atmore. There was evidence the bodies were on the paved portion of the road and were thirty feet apart. The bodily injuries indicated they had been run over by a motor vehicle. There was also evidence tending to show the collision occurred before daylight and the weather was foggy. There were no eye witnesses to the accident. Witnesses who observed the boys before they were hit said they were trying to hitchhike a ride.

The state introduced evidence tending to show that prior to the trial defendant admitted he was driving a truck with a tank-type trailer on highway 21 at the approximate time the boys were alleged to have been killed, but that he denied seeing anyone on the road and denied running over the boys. An examination of. the truck and trailer at the truck terminal in Mobile on August 11, revealed hair, blood stains and a black piece of cloth which corresponded with a tear in the pants worn by deceased; tire marks on the body were determined to have been caused by the tires on the trailer.

When the state had rested its case appellant's counsel moved to exclude the evidence. The motion was overruled. No evidence was introduced for defendant.

The sufficiency of the evidence to sustain the charges in the indictment was also presented by the request for the general charge as to each Count and by a motion for a new trial.

"Manslaughter in the second degree is defined as the unlawful killing of another human being, without malice and without the intent to kill or to inflict the injury resulting in death, but accidentally committed by the accused while he was doing an unlawful act amounting to a misdemeanor, or accidentally committed by the accused while he was doing a lawful act, but in a grossly negligent or improper manner."

Jones v. State, 21 Ala.App. 234, 109 So. 189. See also, Wilson v. State, 32 Ala.App. 591, 28 So.2d 646; Lightfoot v. State, 33 Ala. App. 409, 34 So.2d 614.

Mr. H. G. Lambert, an employee at the State prison farm, testified he left work a

few minutes before 4:00 A.M. and drove to his home in Atmore; that he saw the two boys standing on the side of the road at Vickery's and after passing them he met one car and a big truck. The truck "was making an extreme noise and knocking went like it was shifting gears to me, I just noticed that and that's all I paid any attention to."

Mr. Downing, who was riding with Mr. Lambert, remembered meeting two cars and a truck. He had no judgment as to the kind of truck it was, but it sounded like it was traveling about as fast as it could go, but there was nothing about the truck to excite his curiosity except the "unordinary racket it was making."

Mr. Vickery went out to investigate when he heard his dogs barking, then he heard talking down at the highway and went back to bed. A little later he heard a bumping noise and a vehicle which sounded like a truck. The truck seemed to slow down and then pick up speed.

Mrs. Jack Rolin testified that between four and four thirty on the morning of August 9th she had occasion to travel north on highway 21, and saw something like a tarpaulin rolled up on the road; that they drove around it; that she lived on highway 21, at Atmore, and she saw a tank type truck pass her house earlier going north; that on account of the noise it was making it seemed to be running wide open; that she was not very familiar with speeds of vehicles; that she rode with her husband usually and he didn't drive very fast; that in her opinion it was going sixty or seventy; that it was still dark and she could tell nothing about it except that it was "just a big truck lit up with lights."

█ If we are to assume from the above testimony that the theory of the prosecution was that defendant was exceeding the speed law, then we think this testimony falls far short of proving such theory. The witnesses were not shown to have any special knowledge as to speed. "Such expressions

as 'going fast' or 'going rather fast' are relative and are not evidence of actual speed." Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505.

Furthermore, to paraphrase the language of the court in Gill v. State, 37 Ala.App. 210, 65 So.2d 821, it would be pure conjecture, under this evidence, to conclude that the truck the witnesses testified to seeing and hearing was the same one operated by the defendant, and that he ran his truck over or against the deceased in such a manner as to constitute the offense of manslaughter.

We are of the opinion the evidence fails to sustain the conviction under Count One. Gill v. State, supra; Massengale v. State, 36 Ala.App. 195, 54 So.2d 85.

█ With respect to the "hit and run" charge, we think the facts and circumstances are not sufficient to show that the defendant knew his truck had been involved in an accident. On this question we quote with approval from Herchenbach v. Commonwealth, 185 Va. 217, 38 S.E.2d 328:

"The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action; that is, to stop and give the aid and information specified.

"How can a person perform these affirmative acts unless he knows that his vehicle has struck a person or an object? Knowledge necessarily is an essential element of the crime. This does not mean that the person should have positive knowledge of the extent of the damage or injuries inflicted. It does mean that, in order to be guilty of violating the statute, 'the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known. If an injury is inflicted under such circumstances as would ordinarily

superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or collision, then it is the duty of the operator to stop his vehicle.' 5 Am.Jur. 921. See Annotations in 16 A.L.R. 1425; 66 A. L.R. 1228; 101 A.L.R. 913; People v. Graves, 74 Cal.App. 415, 240 P. 1019; People [on Complaint of O'Connor] v. Hirsch, 241 App.Div. 712, 269 N.Y.S. 830; and State v. Verrill, 120 Me. 41, 112 A. 673."

The provision of the Virginia Statute is similar to Section 128 of Title 36, Code 1940.

[7]   The only evidence that could be said to indicate defendant's knowledge of the accident was the testimony of Mr. Coley, an investigator for the Department of Public Safety. This witness stated that defendant told him he left the truck terminal at Mobile around midnight; that his destination was Cullman; that after stopping at two truck stops he proceeded up Highway 21 to Frisco City, from there on a farm to market road to Highway 84; on Highway 84 to Grove Hill and from Grove Hill on Highway 5 to Birmingham and on to Cullman. The witness stated the distance from Grove Hill to Mobile by the route taken by defendant is 130 to 135 miles, while the distance from Grove Hill to Mobile on U. S. Highway 43 is only approximately 85 miles. But if the purpose of showing the circuitous route taken by defendant after leaving the scene of the accident was to prove knowledge, we think the witness' statement on cross-examination that he was familiar with the condition of Highway 43 in August, 1961, and that a twelve or fifteen mile section of the road was in very poor condition was explanatory of the defendant's action in taking the longer route.

The defendant drove to Cullman, returned the trailer to the truck terminal at Mobile, where it was examined by the officers two days after the accident. As was said by the Virginia Court in the Herchenbach case, supra, if the defendant knew and desired to conceal the fact that his truck had struck a person or an object, he had every opportunity to remove the blood stains, hair and cloth from the trailer. He made no attempt to do so. The facts are not sufficient to establish that the accused knew his truck had struck deceased.

The evidence failed to sustain the charges against the defendant. The judgment of conviction must be reversed and the cause remanded.

Reversed and remanded.