312 So.2d 81

Gordon Hugh **GILBREATH**

v.

**STATE.**

**6 Div. 795.**

Court of Criminal Appeals of Alabama.

April 22, 1975.

Daniel M. Spitler, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and David L. Weathers, Asst. Atty. Gen., Birmingham, for the State.

W. J. HARALSON, Supernumerary Circuit Judge.

Appellant was convicted of robbery and his punishment fixed at ten years imprisonment in the penitentiary.

Before proceeding into the trial of the case on its merits on October 15, 1973, appellant filed a motion for dismissal of the charge on the grounds that he had been denied certain rights guaranteed under the Constitution of the United States, in that the police had made an illegal search of the premises where he was residing without a warrant or probable cause and that the premises had been broken into by police officers of the City of Birmingham, who damaged certain property and inflicted certain physical damage on the appellant in their search; and he claims the action along this line was in violation of due process guaranteed under the Fourteenth Amendment of the Constitution of the United States; and the motion further averred the appellant had been denied a speedy trial by a fair and impartial jury in violation of his constitutional rights under the Sixth Amendment of the Constitution of the United States.

The court conducted a hearing, outside of the presence of the jury, on this motion and at the conclusion, it was overruled. The testimony offered on the hearing was fairly voluminous and will not be set out in detail, but only the portion thereof that will serve to illustrate the conclusion reached by the court. Our conclusion is that there was no error in the action of the trial court in overruling the motion to dismiss.

First, we turn our attention to the argument of appellant that he was denied the right to a speedy, fair, and public trial. It appears from the record appellant was first arrested on this charge December 15, 1972, and indicted by the grand jury of Jefferson County on February 9, 1973, for the offense of robbery. He was committed to jail on a writ of arrest based upon the indictment on February 12, 1973, and on March 2, 1973, he entered a plea of not guilty on arraignment. Before arraignment, having been adjudged indigent, Hon. Douglas Corretti, an attorney, had been appointed to represent him and did represent him throughout the proceedings in the trial court. The case was set for trial on April 2, 1973, but apparently not having been reached by the end of the week of April 2, 1973, the case was passed on April 6 to May 14, 1973, by Judge Gibson. On May 14, 1973, at the request of the appellant the case was again passed by Judge Gibson to June 4, 1973. It appears from a reference to the calendar June 4, 1973, was a Monday and on the 8th day of June 1973, which was Friday of the same week, the case was passed by Judge Jasper to October 15, 1973. On October 14, 1973, the motion to dismiss, above referred to, was filed and heard on October 15, 1973, and was overruled by the court. The case proceeded to trial immediately on its merits, with Judge Gibson presiding, which trial resulted in a mistrial. On January 15, 1974, the case was passed to April 8, 1974, at the request of appellant and on April 12, 1974, the case was passed to June 24, 1974, with a docket notation that it was un-

reached. The trial from which this appeal was taken occurred on June 26, 1974.

The record of this case, above set out, reflects that among the several continuances ordered by the judges of the circuit court, at least two were at the request of the appellant, one continuance shows a docket notation that the case was not reached and two that the case was passed at the end of the week after having been set on Monday of the same week.

The record further indicates that immediately after the filing, hearing and overruling of the motion for a dismissal, the case went to trial, resulting in a mistrial.

Although there was admittedly delay in the disposition of this case, this court takes judicial notice that the criminal docket of the Circuit Court of the Tenth Judicial Circuit, composed of Jefferson County, was extremely heavy, so much so as to cause the Chief Justice of the Supreme Court to direct other judges in the state and some lawyers, acting as special judges, to assist in the dispatch of this heavy load of cases during a part of this period of time covered in the instant matter. In this particular case the record shows that at one time during the handling of this proceeding Hon. Roderick Beddow, Jr., an attorney, was acting as a special judge.

While the heavy load of trial work, in itself, will not excuse unusual delay of the disposition of criminal cases, in the violation of the right of a defendant to a speedy trial, it is a matter that the courts may consider along with other tests laid down by the authorities hereinafter cited.

The opinion of the Supreme Court of the United States in Barker v. Wingo, 407 U. S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101, recognizes that no hard and fast formula can be devised or set out to apply to all cases to determine whether an accused has been denied the right to a speedy trial and that these cases must be decided on an ad hoc basis. That case sets out four factors which should be considered in determining whether a particular defendant has been deprived of a speedy trial. They are: (1) the length of the time of delay; (2) the reason for the delay; (3) the defendant's assertion or claim of his right; and (4) the resulting prejudice to the defendant, if any. In the instant case the delay between the time of indictment and the filing of the motion for a dismissal was slightly over eight months. During this time the case had been passed on four occasions, one of which was at the request of the appellant. On two occasions it appears the case was passed at the end of the week, having been set on Monday of that week, which leads to the conclusion that it was not reached and there is no testimony in the record to indicate otherwise. The appellant did make his motion for dismissal on October 14, 1973, which motion was acted upon on the following day. We have carefully read and studied this voluminous record consisting of 402 pages and we fail to perceive any prejudice to appellant's rights occasioned by the delay. His testimony and that of his witnesses, all of whom apparently appeared in court and testified in his favor, tended to establish, if believed by the jury, an alibi for appellant.

We think our conclusion that the defendant's constitutional rights to a speedy trial were not violated is supported by the rule laid down in Barker v. Wingo, supra, and further finds support in the somewhat analogous case of Braden v. State, 49 Ala. App. 97, 268 So.2d 877.

The next ground set out in the motion to dismiss, that is the claim that the search of the premises where appellant and the gun was found was illegal, is not borne out by the testimony offered at the hearing of the motion.

It appears from testimony presented by the State that on December 15, 1972, appellant and Clarence Purser parked a white Oldsmobile automobile in front of a grocery store operated by State witness Aline

Bruno and her husband in Pratt City, Jefferson County. Appellant was seen by Mrs. Bruno sitting under the steering wheel of the car and also by State witness Alan D. Hill. Both witnesses saw Clarence Purser sitting next to him in the front seat. Mrs. Bruno entered the store, closely followed by Hill, and very shortly thereafter Clarence Purser appeared in the store, armed with a single-barrel shotgun and announced to Mrs. Bruno and several others present that "this is a hold-up." He first disarmed a guard and then ordered Mrs. Bruno to hand over the money in the cash register, which she did, in an amount of approximately $365.00. Everyone in the store then was immediately ordered to lie down on the floor and to stay there until Purser was gone. He left immediately with the money and although no one saw the white Oldsmobile leave, it and its occupants were gone shortly thereafter. They had apparently taken a back street and in leaving had not passed the front of the grocery store.

Officer Thomas C. Green testified that he had received a telephone call at the tactical headquarters of the police that some robbery suspects were in a house at 322 Avenue T, Ensley, about 3 o'clock in the afternoon of the day of the robbery and that he also had heard over the radio of the robbery itself. He immediately went to that address and that when he arrived there Purser was handcuffed on the front porch and being led down by other police officers off the porch. Officer Green assisted in searching the house at this address and found the appellant under a bed in the bedroom and a single-barrel shotgun standing in the corner of the same room. He further testified that after Purser was arrested that he told the officers that Gilbreath was in the house and would go back in with them and try to persuade him to come out. This appears to have been sometime shortly after some officers searched the house and failed to find Gilbreath. Someone had apparently broken some glass out of the front door.

Officer John W. Brand, a detective sergeant in the police department, testified that he received a robbery call over the police radio system and heard the name Gilbreath and that he knew where appellant, Gordon Hugh Gilbreath, lived. He immediately went to the address, above set out, and while there he joined in the search after Purser was brought out of the house and had been arrested. He also testified that he saw a white Oldsmobile sitting in the yard behind the house. On the search of the house he further testified he had not seen the shotgun when he first looked into the room but later saw it standing in the corner of the room where appellant was found under the bed.

None of the officers had a search warrant and, in fact, no search warrant had been procured by any one before the search was made.

■ Based upon the testimony briefly outlined, we are of the opinion the officers had probable cause to search the house and that there was no necessity under the circumstances for a search warrant to make a valid search.

Perhaps the leading case in our State on the question of the right to search without a warrant is the case of Daniels v. State, 290 Ala. 316, 276 So.2d 441, in which the court lays down several exceptions to the general rule that a lawful search cannot ordinarily be made without a warrant. One of the exceptions set out to this well-known rule applies to a situation "where 'exigent circumstances' exist coincidental with 'probable cause' . . . see Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)."

The case of Maryland Penitentiary v. Hayden, 387 U. S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, is analogous to the instant case. In that case the police officers who had been notified of a robbery and that the alleged robbers had taken refuge at an address, immediately proceeded to that ad-

dress and arrived only minutes after the robbery occurred without a search warrant, searched the house and found the robbers and the gun apparently used in the robbery. The Supreme Court stated that under the circumstances that "the exigencies of the situation made that course imperative". The court went on to say,

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

In the instant case, we believe the officers had probable cause to believe that the information that they had received that appellant had participated in the robbery and that he and Purser would likely be at the address given them. According to the testimony, they arrived at the address only minutes after the robbery occurred. After arriving there and after Purser was arrested, he advised them that Gilbreath was, in fact, in the house and that he could persuade him to surrender if he would be allowed to go back in with them. On the search made on this information, Gilbreath and the shotgun similar to the one used in the robbery was found.

We think the search without a warrant was valid and the evidence procured thereby was admissible in the trial of the case. *Authorities*, supra.

No error appears in the action of the court overruling appellant's pretrial motion.

█ The sufficiency of the evidence to support the verdict is not before the court since no ruling of the trial court was invoked during the trial which would preserve this question for review.

█ Appellant objected to statements made by Purser during the course of the robbery, out of the presence of the appellant, which statements were directed to Mrs. Bruno and some of the people present in the grocery store. The court overruled these objections and we think correctly so. Under the entire evidence offered, the jury could reasonably infer that the appellant and Clarence Purser were conspirators with the object and purpose of the conspiracy being the robbery of the Bruno Grocery Store. Under this theory the acts and declarations of Purser, one of the conspirators, as referred to, would be admissible against the appellant. Alabama Digest, Criminal Law, Volume 6, ☞423(5).

We have examined the other suggested errors set out in the appellant's brief headed "Assignments of Error." We have examined the record carefully in the light of the so called assignments of error and find no error as suggested therein. Nor do we find any other error on the record which we think is injurious to the substantial rights of appellant. In fact, the court and the attorneys were careful and painstaking in the trial of this case, resulting in a verdict free from substantial error. The case is due to be and is, hereby, affirmed.

The foregoing opinion was prepared by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.