L. S. MOORE, Retired Circuit Judge.
The appellant was convicted for murder in the first degree and the jury fixed his punishment at life imprisonment. Final judgment of conviction and sentence were entered by the trial court in accordance with the jury’s verdict; hence this appeal.
Robbie Jane Harrison testified that she lived at 711 Alexander and that on July 3, 1974 she was living at 1870 B Gibbs Circle. She was divorced from appellant on Decern- *430 ber 12, 1973 and on July 3, 1974, lived with four of her children. Appellant did not have visitation rights at her house and she had not invited him there since the divorce. On the night of July 3, 1974 she was at home with a guest, John Malone, Jr. When appellant first came to her home, which was in her name, about 8:00 P.M. Robbie Harrison and Malone were on the front porch barbecuing. Appellant asked if her daughter was back from Atlanta and she told him that the daughter had not returned and that another daughter, Delois, was in the house. Appellant then left and came back about 9:00 P.M. and parked his car on the side of the street in front of the house. Robbie Harrison had not invited him to her home. Malone was still on the front porch with Robbie Harrison when appellant came to the porch but not on it. Appellant called Delois, but when she came to the door and asked what he wanted, he said, “Nothing.” Appellant, who had planted some okra in the yard, told Malone to stop throwing cigarette butts in the garden. Robbie Harrison said to appellant; “I know your are not talking to me. I live here, and you don’t have any right to tell me what to do.” Malone then said to her; “You guess he’s talking to me?” but did not then get up out of his chair. Appellant replied; “I guess I am” and stood near the porch awhile and then went down the walk-way with his gun at his side in a holster with his hand on it. Robbie Harrison turned around to put charcoal on the grill and heard two shots. She turned back and Malone had his hands up and a gun in one of his hands. Malone then went to the left of the walk-way and shot at the appellant. Appellant ducked behind the car and shot back at Malone, who “fell right beside the car.” Appellant then came from behind Robbie Harrison’s son’s car and stood over Malone. Malone did nothing and appellant shot him in the face two or three times.
On cross-examination this witness testified that when appellant left her home on the first occasion he said, “I’ll be back.”
Delois Jarret testified she lived at 711 Alexander Street and that on July 3, 1974 she lived at 1870 B Gibbs Circle with her mother, Robbie Harrison. Appellant was her father. She saw him and John Malone, Jr. at her mother’s home about 9:00 P.M., July 3, 1974. Appellant asked for her but when she asked him what he wanted he said, “nothing.” She then went back into the kitchen. Later there was some shooting and she came to the door and saw Malone on the ground. She then saw appellant come from behind the car on to the side where Malone was, stand over him, and start shooting. She was in the house when the shooting began and did not see who shot first. When she saw them, appellant was standing on the other side of the car and Malone was lying down on the side of the car nearest the house. She then saw appellant come back and shoot Malone.
Rayford Warren Latham, a Montgomery policeman, testified in substance that he arrived at 1870 B Gibbs Curve, the scene of the shooting, about 9:20 P.M., July 3, 1974. The place was in Montgomery County, Alabama. When he got there he saw appellant in the middle of the highway with a shotgun. Appellant handed Latham the weapon and stated he had done the shooting and had shot this fellow. The man that had been shot was lying in front of the house next to the curb. While Latham was there, Officer Frank Robertson, Detective Leola Davis and Detective Sidney Williams came to the scene. Latham arrested appellant who stated that he had been shot. He then went with appellant to the hospital where he was treated and released. Latham then carried appellant to the Detective Division of Police Headquarters. He gave the shotgun, the appellant handed him at the scene of the shooting, to Sidney Williams or Leola Davis.
Richard A. Roper, a State Toxicologist, whose qualifications were admitted, testified in substance that he performed a “post mortem” on John Malone, Jr. on July 6, 1974. He found three wounds on the body. One of the wounds was in the middle of the face over the bridge of the nose, another was on the left side of the neck and the third was a ragged wound on the top of the *431 head. They were pistol-type wounds. According to Roper death resulted from central nervous system trauma or brain injury and intracranial hemorrhage, bleeding inside the head, which resulted from the wounds. Roper stated he extracted a bullet from the body of John Malone, Jr. He then produced that bullet. Roper testified that the bullet was fired from a rifled weapon and that a pistol was such a weapon.
Sidney Williams, a detective, testified he went to 1870 B Gibbs Circle about 9:45 P.M., July 3, 1974. When he arrived appellant was in a patrol car and the deceased was lying on his back in the driveway. The deceased was identified to him as John Malone, Jr. Williams found a .32 caliber and a .22 caliber pistol there and Officer La-tham gave him a shotgun. He found the .32 caliber pistol in a holster in plain view on the seat of appellant’s car which was in front of the house. He found the .22 caliber pistol lying on the side of the car parked in the driveway next to the deceased’s body. Appellant owned the .32 caliber pistol and the .22 caliber pistol was the property of the deceased man. About 11:00 P.M. that night the appellant gave Williams a written statement which was offered in evidence by the State. Counsel for appellant stated to the court: “I join with the prosecution in asking that it be admitted in evidence.” Williams said appellant stated that he owned the .32 caliber pistol found in his car at the scene of the shooting and that he fired it seven or eight times.
Thereupon the State rested and the appellant moved to exclude the State’s evidence on the ground the State had failed to make out a prima facie case. The court overruled the motion.
The appellant testified in substance that when he went to the scene of the shooting the first time his guns were in his car and that he did not get them out of the car. He also testified that on his second visit he left them in the car. According to appellant he was standing at the porch when Malone called him “M — F” and started shooting at him. Appellant stated he started toward his car but before he got to it Malone shot him in the back. He said that, while he was going to the car and Malone was shooting at him, he was not trying to get away. He denied running but said he could run fast. However, he said he did not run fast.
We quote the following from the record of the cross-examination of appellant:
“Q Okay. Now, you say you didn’t have your gun and you were going to your car to get your gun; is that correct?
“A Right.
“Q And all of this time, Mr. Malone was shooting at you?
“A He was shooting at me.
“Q And only hit you one time?
“A Maybe God planned for him not to hit me but one time.
“Q All right. Where was your gun in the car?
“A I had a gun in the glove compartment, and I had one in the trunk.
“Q Did you get the gun out of the glove compartment?
“A I really did.
“Q Okay. What kind of gun was it? “A .32 automatic.
“Q .32 automatic?
“A Yes.
“Q Was it in a holster?
“A It was in a holster.
“MR. PRICE: Will you mark this, please? (Whereupon, the gun and holster just referred to was [sic] marked as State’s Exhibit No. 7 for identification.)
“Q (By Mr. Price) Rev. Harrison, I show you what has been marked as State’s Exhibit No. 7 and ask you to look at it, please.
“(Witness complies.)
“Q Is that your gun?
“A Sure, it’s mine.
“Q Is that the one you got out of the glove compartment?
“A That’s the one I got out of the glove compartment.
*432 “Q Is that the one you killed Mr. Malone with?
“A Right.”
The appellant shot John Malone, Jr., July 3, 1974 and was arrested on that date and remained in jail having failed to make bail until April 16, 1975, when he was released on his own bond without sureties. The indictment was returned on November 6, 1974 and bail was fixed at that time at $5,000. by the court. The appellant was arraigned on November 12, 1974 and trial was set for December 12, 1974. On December 13, 1974, appellant filed a written motion to dismiss the cause for denial of a speedy trial and want of prosecution, alleging the case was continued without appellant’s consent and that subpoenas for the State’s witnesses, Robbie Harrison and De-lois Harrison had been returned “not found” on December 12, 1974. The record does not disclose any proof taken on said motion. The motion was denied by the court on December 13, 1974. The record does not contain an order of the court continuing the case on December 12, 1974, or December 13, 1974 and it does not contain an order resetting the case for trial. However, appellant filed a written motion on March 27, 1975 to dismiss the cause on the .grounds: he had been in jail since July 3, 1974; that the case was set for trial December 12, 1974 and continued to December 13, 1974 and was continued to February term of court and again set for trial on March 25, 1975 and on that date continued to March 26, 1975 and was again continued on March 26, 1975; and that the appellant was ready for trial, and so announced on each of said dates but that the case was so continued without consultation with his counsel. The record on this appeal does not contain any of the orders of the court continuing said case or setting same for trial mentioned in the motion. There was attached as exhibits to the motion “Exhibit ‘A,’ ” which purports to be a list of “CRIMINAL CASES TRIED THIS TERM THROUGH 3/25/75.”
Through March 25, 1975, the record does not disclose any .evidence taken on- said motion nor does it show that any was taken. In the record there is an order of the court, dated April 16, 1975, denying the motion and ordering that the defendant be released on his own bond due to the length of time the defendant had been in jail and his having no previous record. The case was tried on July 25, 1975, and final judgment was entered on said date.
The appellant contends on this appeal that reversible error exists due to: (1) failure to give appellant a speedy trial, (2) denying and overruling appellant’s motion to exclude the State’s evidence on the ground the State had failed to make out a prima facie case, and (3) that the verdict of the jury was against the great weight of the evidence and the trial judge overruled appellant’s motion for judgment non ob-stante veredicto based on said grounds.
We will treat these claimed errors in the order stated in the above opinion.
In Kircheis v. State, 56 Ala.App. 526, 323 So.2d 412, cert. den. 295 Ala. 409, 323 So.2d 421, this court, with reference to the issue of a speedy trial, stated:
“Appellant states that the court continued this case twice over his objections and that 307 days lapsed from the time of his arrest until he was brought to trial. One of these continues was due to a motion for change of venue filed by appellant because of widespread publicity and he could not get a fair trial.
“[1] Some of the factors to be considered by appellate courts in determining whether an accused has been denied a speedy trial are set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. These factors are: (1) length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his ■right, and (4) prejudice to the defendant. The defendant in this case has not shown that he was prejudiced in any way. He filed a motion for change of venue on October 18, 1974, and it was not denied until February 26, 1975. Another factor that must be considered is the congestion of court dockets.
“In Giles v. State, 52 Ala.App. 106, 289 So.2d 673, this court held that a delay of *433 twelve months is not sufficient to show a denial of the right to a speedy trial absent a showing of prejudice to the accused.
“In Gilbreath v. State, 54 Ala.App. 676, 312 So.2d 81, this court held that a delay of slightly over eight months was not too long where there was no evidence of prejudice to the defendant.
“In Cole v. State, 52 Ala.App. 447, 293 So.2d 871, this court said:
“ ‘There has been no unreasonable delay on the part of the state in bringing appellant to trial. It is settled law that speedy trial rights to not operate to deprive the state of a reasonable opportunity to prosecute defendants. A defendant cannot claim his constitutional rights have been denied where the delay is caused by him, or where delays are made necessary by the law itself, or occasioned by want of time to try the case. Sample v. State, 138 Ala. 259, 36 So. 367; Braden v. State, 49 Ala.App. 97, 268 So.2d 877.
“In Sellers v. State, 48 Ala.App. 178, 263 So.2d 156, we said:
“ ‘In addition to showing a demand for speedy trial, to make a prima facie case for release an accused normally must also show that actual prejudice resulted from the fact that trial was delayed. Hoskins v. Wainwright, 440 F.2d 69 (5th Cir., 1971); United States v. King, 431 F.2d 734 (5th Cir., 1970); United States v. Fitzpatrick, 437 F.2d 19 (2d Cir., 1970); cf. Dickey v. Florida, supra [398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26]. According to Hoskins, supra, if the accused relies on passage of time alone to establish prejudice, he can meet this burden by showing (1) that prosecution was delayed beyond the point at which a probability of prejudice arose; (2) that he himself was not responsible for the delay; and (3) that the state ought reasonably to have avoided the delay.’
“[2] It is settled law that speedy trial rights do not operate to deprive the state of a reasonable opportunity to prosecute defendants. Hamilton v. State, 52 Ala. App. 96, 289 So.2d 663.
“[3] There was no error in the denial of the motion to dismiss the indictment.”
Appellant in one of the motions filed regarding a speedy trial alleged that the two witnesses for the State, present at the difficulty in which John Malone, Jr., met his death, could not be found for service of subpoenas. The evidence in the case showed that at the time of the trial they lived at another place from where the shooting occurred. There was also an exhibit attached to one of said motions that has some tendency to show a crowded docket at the time in the trial court. No evidence appears to have been taken on either of the motions. The record in this case does not reveal any prejudice to the defendant by the delay of eight or nine months for the return of the indictment until the date of the trial. There is no statute of limitation for murder in the first degree. Therefore, the time between the death of Malone and the return of the indictment has little or no weight on the question of a speedy trial.
In the absence of a showing of prejudice to the defendant, a continuance rests in the sound discretion of the trial court. Clark v. State, 54 Ala.App. 217, 307 So.2d 28. The evidence does not show an abuse of discretion in that respect.
It is the considered opinion of this court that reversible error should not be predicated in this case upon a failure to give the appellant a speedy trial.
We come now to a consideration of appellant’s motion to exclude the State’s evidence. To present a jury question it is said in Massengale v. State, 36 Ala.App. 195, 54 So.2d 85, that:
“. . . there must be substantial evidence tending to prove all elements of the charged offense, a mere scintilla of evidence, in view of the presumption of innocence, being insufficient.”
In the case before us, the evidence clearly shows the appellant killed the deceased by shooting him with a pistol. The appellant endeavored to excuse or justify the killing by reason of self-defense. Although the evidence shows the appellant received the *434 first wound from a bullet fired by the deceased, that standing alone does not make out self-defense. The jury could have reasonably determined that the appellant was not retreating as he went toward his car, but that he was going to the car to get his gun. Further, it could have reasonably determined that he entered the difficulty willingly, and that his purpose in going to the house the second time was to provoke a difficulty. There was evidence that he had his pistol on his person at the time notwithstanding his testimony that his guns were in his car. The evidence further shows that Malone was wounded and fell by the car. The fact that he was lying down tended to show he was incapable of doing further harm to appellant and all danger to appellant had ceased. It was at this time that appellant stood over Malone and shot him more than once. One of the bullet wounds was in top of Malone’s head.
One of the elements of self-defense is that the defendant must be in present impending danger to his life or danger of great bodily harm. Collier v. State, 49 Ala.App. 685, 275 So.2d 364. The evidence in this case is substantial evidence of the guilt of the appellant and that at the time of the fatal act he was not in any danger from Malone and that he was not justified by reason of self-defense. A jury question was clearly presented and the motion to exclude was thus correctly and legally overruled.
The motion of the appellant for judgment non obstante veredicto, after stating the grounds of said motion contains the following:
“WHEREFORE, the premises considered, the defendant moves this honorable Court for a judgment non obstante veredicto, setting aside the verdict of the jury completely and finding for the defendant, or, in the alternative, substituting for the jury’s verdict a verdict of no more than first degree manslaughter, and further, the defendant, should the Court choose the latter course, the defendant requests probation.”
I have been unable to find any case or statute of Alabama, and none had been cited, that approves such a procedure in criminal law.
There are numerous cases by the appellate courts of this State, holding that the judgment of the trial court must be based upon a valid and legal verdict. Lollar v. State, 37 Ala.App. 601, 73 So.2d 564; Graham v. State, 233 Ala. 387, 171 So. 895; Marable v. State, 229 Ala. 435, 157 So. 861.
To grant such a motion in a criminal case would deny the defendant the right to a trial by jury. The denial of said motion is without error.
Even if by the stretch of imagination the said motion could be legally considered a motion for a new trial, that which has been said by us in passing upon the ruling of the court on appellant’s motion to exclude the evidence is sufficient to demonstrate its denial is without error.
We have searched the record' for error and have found none.
The foregoing opinion was prepared by the Honorable L. S. MOORE, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
It is therefore ordered and adjudged by this court that the judgment of the trial court be and is hereby
AFFIRMED.
All the Judges concur.