L. S. MOORE, Retired Circuit Judge.
The appellant was indicted and tried for the offense of murder in the first degree. She was convicted for the offense of manslaughter in the first degree and the jury fixed her punishment at three years in the penitentiary. Final judgment was entered by the trial court in accordance with the verdict of the jury and appellant brought this appeal.
The evidence presented by the State shows that the appellant and the deceased, Chauncey D. Williams, were living together at 116 Riverside Drive, Montgomery in Montgomery County, Alabama. There was no evidence that they were married. The State’s evidence shows that on the morning of October 24, 1975, the appellant shot and *210 killed Chauncey D. Williams with a pistol. The incident occurred in the home where they were living. The shooting was first investigated by Donald Greathouse, a policeman for the City of Montgomery. When Greathouse arrived at the home he met the appellant coming out of the house and appellant said to him that she had shot Williams and that he was in the bedroom. Greathouse went into the house and found the deceased lying on his back in the béd-room. Appellant told Greathouse: “The gun is in my purse.” He saw the gun in her purse but did not take it into his possession. The officer said that the deceased had a “bullet hole past his neck,” and that a spent round was in the bathroom. The hall from the bedroom door to the bathroom, which was really part of the living room, showed a mark on the wall where a bullet had ricocheted outside the bedroom door. The body of the deceased was identified by the mother of the deceased, a witness for the State.
Richard A. Roper, a State toxicologist, testified as a witness for the State, that he performed a post-mortem examination on the body of Chauncey D. Williams on October' 24, 1975. He found a bullet wound at the top of the breast bone, and one in the left hand, which had entered the back of the hand and exited on the palm side of the hand. Roper removed the .32 caliber bullet from the body that had caused the first wound mentioned. He stated the bullet had penetrated a large artery out of the heart in the chest and was the cause of death.
Arthur Stoudemire, a taxi-cab driver, testified in substance that he went to the home of appellant on October 24, 1975 about 6:40 A.M. “[t]o take her away.” Stoudemire said that he had known appellant for two or three years and that he also knew Chauncey Williams whom he had driven home, but that he did not know who was living with the appellant at the time. He said that about 6:50 that morning she came out of the house and asked him to call an ambulance and said that she had shot “her old man.” Stoudemire testified that he had heard three shots and did not call an ambulance but went to get appellant’s mother who subsequently called the police.
Detective R. E. Fisher of the Montgomery Police Department testified that on October 24, 1975 he investigated the shooting at 116 Riverside Drive. When he arrived he found appellant sitting in the living room, and the deceased in bedroom lying on his back on the floor. Fisher stated he found no weapons on the deceased, but found one bullet hole in the door facing, leading into the bedroom from the hall. He also found a bullet hole in the wall in the bedroom just below the double windows, and a hole in the pillow and the mattress. Fisher said that he placed appellant under arrest and read her constitutional rights to her from a form. He read the form to the jury, and it contained full and complete “Miranda” warnings. Appellant had signed a statement on the form which said:
“. . .1 fully understand the foregoing statement and do willingly agree to answer questions. I understand and know what I am doing. No promise or threats have been made to me by anyone and no pressure of any kind has been made against me by anyone.”
Fisher further testified that he and appellant were the only ones present at the time, and that he applied no pressure against her and offered her no inducement, reward or hope thereof, or any leniency or hope of leniency to get her to make a statement. He further said that she did make a statement. The statement, which was in writing, was identified by the witness and introduced into evidence without objection.
The statement is as follows:
“Friday Oct. 24 1975
“9: a. m.
“I Gloria Miller do hereby make the following statement and answer the following questions to Det. R. E. Fisher of my own free will. My rights have been read to me and I understand what I am doing. “On Thursday Oct. 23, 1975 I came home from work about 6:30 p. m. Chauncey D. Williams who I have lived with for about 2 years came home around 9 p. m. and had been drinking. We argued about his *211 girl friend Ruby Landers and about me not having supper ready when he came in. He beat me with his fist and yelled several times T will kill you Nigger’. He went to the kitchen and got a bar stool and said again that he was going to kill me and I begged him not to. We went to bed about 11 p. m.
“Friday morning Oct. 24, 1975 I got up about 5:50 a. m. and got ready to go to work. We started argueing [sic] again and I told him that I was leaving and I would not be back. He picked up a table that was sitting [sic] by the bed and threw it at me and it hit me in the chest and the stomach. I grabbed a pistol from the closet that he gave me several months ago and started shooting. He ran to the door and closed the door to the bedroom. When I tried to open the door it was hard to open and when I did get it open I saw him laying [sic] on the floor at the foot of the bed. I went outside to my ride (Taxi, Quick Service ¶ 1) and asked him to call a [sic] Ambulance and he said he couldn’t as no one was at the office. I went to May Lee’s house at 44 Gunter St. and she called for me. I went back to the apt. and waited.
“Q. Did you shoot Chauncey D. Williams?
“A. Yes.
“Q. Did you intend to kill him when you shot at him?
“A. No.
“Q. Why did you shoot him?
“A. I thought he was going to beat me again.
“Q. Did the gun that you shot Chauncey Williams with belong to you?
“A. He gave it to me several months ago.
“Q. How many times did you shoot Chauncey Williams?
“A. I just started pulling the trigger but I think it was three times.
“Q. Has Chauncey Williams beat you before Oct. 24, 1975?
“A. Yes, about a month ago he beat me and threw me against the wall and told me to get out.
“I Gloris [sic] Miller have read the above statement and the answer to the questions and I belive [sic] them to be true and correct to the best of my knowledge. I freely sign my name below.
“/s/ Gloria Miller
“GLORIA MILLER B/F
“age 24
“116 Riverside Dr.
“/s/ R. E. Fisher
“DET. R. E. FISHER”
Detective Fisher further testified that when he was at the appellant’s home on October 24,1975, he found a table or nightstand in the bedroom on the right side of the door facing close to the deceased’s body, and a broken leg from the table in the hallway.
The State rested and appellant moved to exclude the evidence as to each degree of unlawful homicide and for a directed verdict. The motion was overruled and denied by the trial court.
The appellant testified in her own behalf generally to the same facts contained in her statement or confession which was admitted as State Exhibit “No. 4.” On cross-examination, she was asked if she had not, during the summer of 1975, shot at the deceased on one occasion and stabbed him on another, and if she had not cut up his clothes on yet another occasion. The appellant’s objections to those questions were overruled and, in substance, she answered each question in the affirmative. There was also testimony by the appellant that the deceased was violent when drinking. She said he was drinking in the early part of the night before the morning of the shooting and that he beat her that night. Appellant stated that the next morning her face was swollen from the beating, and that she talked to Williams the morning of the shooting about her swollen face and the fact that she had to go to work. Miller testified that Williams threw a chair or table at her and struck her with it, and told her he would kill her. She said that she got the pistol out of the closet and shot at him as he was coming toward her, and ran *212 shooting. Appellant was not sure but believed she fired the pistol three times.
A witness for the appellant testified that she saw bruises on appellant’s face and arm just after the shooting.
The appellant did not file a brief in this court.
There was substantial evidence of the existence of every element of the offense of manslaughter in the first degree and that the appellant was guilty of said offense. A jury question was made out by the evidence and the motions of the appellant to exclude the evidence and for a directed verdict were properly overruled and denied. Sullivan v. State, 48 Ala.App. 347, 264 So.2d 576; Massengale v. State, 36 Ala.App. 195, 54 So.2d 85.
In Spain v. State, 37 Ala.App. 311, 68 So.2d 53, there was evidence admitted over objection that the defendant and the deceased had engaged in prior difficulties. On appeal this court stated:
“When evidence of a former difficulty between a defendant and the assaulted party is offered by the State, it is for the purpose of shedding light on the true conduct of the defendant at the time of the subsequent difficulty for which the accused is on trial. Gray v. State, 63 Ala. 66; McAnally v. State, 74 Ala. 9. The general rule is stated to be that the details or merits of the former difficulty cannot be gone into, yet sufficient of the details may be brought out as may illustrate the gravity of the former difficulty. “The demarcation between the fact or, highlights of a former difficulty, and its details, is a vague and tenuous division. A measure of discretion should be allowed the trial judge in determining the extent of detailing necessary to picture the gravity of the former difficulty.
“In reviewing our decisions on this question, Foster, J., in Sanders v. State, 242 Ala. 532, 7 So.2d 483, 484, summarized many of the decisions as follows:
“ ‘The State may introduce evidence of a prior difficulty between defendant and the assaulted party in which defendant was “concerned in an assault on him with a knife, whereby he was severely cut in the neck, a short time before the assault charged in the indictment.” Such not being a statement of “the details or particulars” of that difficulty. Gray v. State, 63 Ala. 66.
“ ‘ “The fact of such difficulty, and its gravity, or the contrary” may be shown. McAnally v. State, 74 Ala. 9, 17. And “the fact that on the day before the killing deceased attacked defendant with scissors, accompanying the attack with a threat * * * was not going into the details or merits of the altercation.” Watts v. State, 177 Ala. 24, 59 So. 270, 272. And “that on that day deceased shot at the defendant (and at another time) drew a ‘gun’ on the defendant (with threats to kill him) were matters the defendant was entitled to have admitted in evidence,” and were not of too much detail. Nelson v. State, 13 Ala.App. 28, 68 So. 573.
“‘And when defendant offered to prove that in a previous difficulty “the deceased was armed with a gun and made a hostile demonstration by pointing the gun at the defendant,” the court was held to have erred in rejecting this evidence after defendant had offered evidence tending to show that decedent was the aggressor. Buffalow v. State, 219 Ala. 407, 122 So. 633, 634. To like effect is Stinson v. Richardson, 239 Ala. 161, 194 So. 508. Compare Harkness v. State, 129 Ala. 71, 30 So. 73.’”
In the case before us the trial judge correctly admitted the evidence of prior difficulties between the appellant and the deceased.
The trial judge, in the ease before us, gave a number of written requested charges and refused several requested written charges, all of which were requested by the appellant. With the exception of the general affirmative charges, the refused charges were either covered by the court’s oral charge, requested charges given, incorrect statements of the law, abstract or argumentative. Said charges were therefore *213 correctly refused. Since there was substantial evidence of appellant’s guilt, a jury question was made out and the general affirmative charges were also correctly refused.
We have searched the record for error which would justify a reversal and have found no such error.
It is therefore ordered and adjudged by this court that the final judgment of the trial court be and is affirmed.
The foregoing opinion was prepared by the Honorable L. S. MOORE, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.